This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.                            **NO. 30,143**

**MARK RICHART,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Jerry H. Ritter, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellee

Warren F. Frost, P.C.
Warren F. Frost
Logan, NM

for Appellant

**MEMORANDUM OPINION**

**VANZI, Judge.**

Defendant was convicted of stalking, aggravated stalking, harassment, and criminal trespass. On appeal, Defendant challenges his convictions on double jeopardy and speedy trial grounds. Having considered Defendant's arguments, we affirm in part and reverse in part.

**BACKGROUND**

This case arises from conduct occurring between September 2005 and March 2008. Defendant and the victim, Petra Nedimovic, worked together as engineers for the 46th Test Group at Holloman Air Force Base in Alamogordo, New Mexico. Between September 2005 and June 2007, Defendant engaged in a pattern of behavior in which he asked Petra to coffee and was refused; left Petra presents, cards, and letters at her parents' home; tried to ask Petra personal questions at work; began following Petra to work and arriving at the same time as her; went by Petra's house; and accused Petra of drugging him, raping him, bearing his child, and then keeping his child from him. Petra informed her supervisors at work, and Defendant was reprimanded. When Defendant's conduct did not cease, Petra contacted the police in June 2006.

The State filed charges against Defendant for stalking, harassment, and criminal trespass in September 2007. The jury found Defendant guilty of stalking and criminal trespass, but was unable to reach a verdict on the charge of harassment. The district

court entered a mistrial on the harassment charge and reserved the right for the State to retry the case. In September 2008, prior to Defendant being tried on the stalking, harassment, and criminal trespass charges, Defendant was indicted for aggravated stalking based on violations of the conditions of his release. Petra and her father testified at the second trial that they saw Defendant driving by Petra's house after he had been released on bond. The harassment charge and aggravated stalking charge were joined and tried before a second jury. The jury found Defendant guilty of both charges. Judgment and sentence was entered as to all charges on November 16, 2009.

**DISCUSSION**

Defendant raises three issues on appeal: (1) double jeopardy prohibits him from being convicted for both stalking and aggravated stalking; (2) double jeopardy prohibits him from being prosecuted for both stalking and harassment; and (3) his right to speedy trial was violated.

**Double Jeopardy**

The United States Constitution and the New Mexico Constitution protect criminal defendants against double jeopardy for the same offense. U.S. Const. amends. V, XIV; N.M. Const. art. II, § 15. "The right to be free from double jeopardy consists of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second

prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *State v. Rodriguez*, 2005-NMSC-019, ¶ 6, 138 N.M. 21, 116 P.3d 92 (alteration, internal quotation marks, and citation omitted). "Within the multiple punishment context, there are two types of cases: (1) multiple violations of the same statute, referred to as 'unit of prosecution' cases; and (2) violations of multiple statutes, referred to as 'double description' cases." *State v. Armendariz*, 2006-NMSC-036, ¶ 20, 140 N.M. 182, 141 P.3d 526. Defendant argues that his convictions for aggravated stalking and stalking violate our unit of prosecution line of cases and that his convictions for stalking and harassment violate our double description line of cases. We address each of these arguments below.

**1.     Stalking and Aggravated Stalking**

Defendant contends that his convictions for stalking and aggravated stalking violate our unit of prosecution cases. Although we note that generally unit of prosecution cases involve multiple convictions under a single statute, and here Defendant was convicted under two different statutes, we assume for the purpose of addressing Defendant's argument on appeal that our unit of prosecution analysis applies. *See* NMSA 1978, § 30-3A-3.1 (1997) (aggravated stalking); NMSA 1978, § 30-3A-3 (1997) (amended 2009) (stalking). We review this issue de novo. *State v. Stone*, 2008-NMCA-062, ¶ 2, 144 N.M. 78, 183 P.3d 963.

In unit of prosecution cases, "we attempt to determine, based upon the specific facts of each case, whether a defendant's activity is better characterized as one unitary act, or multiple, distinct acts, consistent with legislative intent." *State v. Bernal*, 2006-NMSC-050, ¶ 16, 140 N.M. 644, 146 P.3d 289. "Time and space considerations help to determine distinctness." *Stone*, 2008-NMCA-062, ¶ 3. "If time and space considerations cannot resolve the case, then a court may look at the quality and nature of the acts, or the objects and results involved." *Bernal*, 2006-NMSC-050, ¶ 16 (internal quotation marks and citation omitted). Thus, "[i]n our consideration of whether conduct is unitary, we have looked for an identifiable point at which one of the charged crimes had been completed and the other not yet committed" or for an intervening event. *State v. DeGraff*, 2006-NMSC-011, ¶ 27, 139 N.M. 211, 131 P.3d 61.

Defendant contends that his convictions for stalking and aggravated stalking violate our unit of prosecution cases, because the State based two stalking charges on the same course of conduct. Although Defendant concedes that there was a break in that conduct based on the State's filing of stalking charges against Defendant, Defendant argues that "there must be two separate and distinct patterns of conduct that are separated by a legal break in the conduct to allow separate convictions for

5

stalking."  Defendant next contends that the State failed to demonstrate a second pattern of conduct to support the aggravated stalking charge. We disagree.

Pursuant to Section 30-3A-3.1(A),

> A.    Aggravated stalking consists of stalking perpetrated by a person:
> (1) who knowingly violates a permanent or temporary order of protection issued by a court, except that mutual violations of such orders may constitute a defense to aggravated stalking;
> (2) in violation of a court order setting conditions of release and bond;
> (3) when the person is in possession of a deadly weapon; or
> (4) when the victim is less than sixteen years of age.

Stalking is defined as

> knowingly pursuing a pattern of conduct that would cause a reasonable person to feel frightened, intimidated or threatened.  The alleged stalker must intend to place another person in reasonable apprehension of death, bodily harm, sexual assault, confinement or restraint or the alleged stalker must intend to cause a reasonable person to fear for his safety or the safety of a household member.  In furtherance of the stalking, the alleged stalker must commit one or more of the following acts on more than one occasion:
>
> (1) following another person, in a place other than the residence of the alleged stalker;
> (2) placing another person under surveillance by being present outside that person's residence, school, workplace or motor vehicle or any other place frequented by that person, other than the residence of the alleged stalker; or
> (3) harassing another person.

Section 30-3A-3(A).  In *State v. Smile*, this Court held that it is not necessary for a pattern of one or more of the aggravated factors to be established to prove aggravated

stalking. 2009-NMCA-064, ¶ 14, 146 N.M. 525, 212 P.3d 413, *cert. quashed*, 2010-NMCERT-006, 148 N.M. 584, 241 P.3d 182. Rather, it is sufficient that a pattern of conduct is established that stalking has occurred, and "the crime charged may be escalated to aggravated stalking as soon as one of the aggravating factors occurs." *Id.*

The State presented evidence at Defendant's second trial that after Defendant had been charged with stalking in June 2007, Defendant engaged in a subsequent pattern of conduct sufficient to satisfy the aggravated stalking statute. Petra testified that on March 1, 2008, she observed Defendant drive by her property. Petra's father testified that on March 1, 2008, he was with Petra and observed Defendant drive by Petra's property twice. Petra's father testified that he also saw Defendant drive by his house sometime after March 3, 2008. Further, Petra submitted an affidavit stating that she saw Defendant drive by her house on March 4, 2008. This evidence constitutes a new pattern of conduct that was in violation of the terms and conditions of Defendant's release. Thus, contrary to Defendant's argument, the State met its burden of establishing a pattern of conduct and aggravating factors that occurred subsequent to the break in conduct established by the filing of stalking charges against Defendant. To the extent Defendant argues reversal on this ground, Defendant's argument is unpersuasive.

**2.      Stalking and Harassment**

7

Defendant also contends that his double jeopardy rights were violated when he was convicted of both stalking and harassment based on the same conduct. Thus, Defendant argues that his convictions on these charges violate our double description line of cases. New Mexico courts have "adopt[ed] a two-part test for double-description multiple punishment cases." *Armendariz*, 2006-NMSC-036, ¶ 20 (citing *Swafford v. State*, 112 N.M. 3, 810 P.2d 1223 (1991)). "The first part of the test requires the determination of whether the conduct underlying the offenses is unitary." *Id.* ¶ 21. The second part of the test "requires us to examine the relevant statutes to determine whether the Legislature intended to create separately punishable offenses." *Id.* "If the conduct is non-unitary, multiple punishments do not violate the Double Jeopardy Clause, and our examination ends." *State v. Ford*, 2007-NMCA-052, ¶ 10, 141 N.M. 512, 157 P.3d 77. However, "if the conduct can reasonably be said to be unitary," we proceed to determine "whether the Legislature intended multiple punishments." *Id.* (alteration, internal quotation marks, and citation omitted).

To address unitary conduct for double description cases, we consider whether the defendant's acts are separated by sufficient "indicia of distinctness." *Swafford*, 112 N.M. at 13, 810 P.2d at 1233. Indicia of distinctness are present when "two events are sufficiently separated by either time or space (in the sense of physical distance between the places where the acts occurred)." *Id.* at 13-14, 810 P.2d at 1233-

34. But if time and space considerations are not determinative, "resort must be had to the quality and nature of the acts or to the objects and results involved." *Id.* at 14, 810 P.2d at 1234; *see State v. Barrera*, 2001-NMSC-014, ¶ 36, 130 N.M. 227, 22 P.3d 1177 (stating that "[d]istinctness may also be established by the existence of an intervening event, the defendant's intent as evinced by his or her conduct and utterances, the number of victims, and the behavior of the defendant between acts" (internal quotation marks and citation omitted)).

The State contends that no double jeopardy violation occurred because the conduct supporting Defendant's convictions for stalking and harassment were supported by two separate and distinct courses of conduct. Specifically, the State argues that Defendant's acts of following Petra to and from and work and placing her under surveillance constituted the conduct supporting the stalking charges, and that Defendant's claims that Petra kidnaped, raped, and drugged him and was keeping his child from him constituted the pattern of conduct for the harassment charge.

In order to assess whether the conduct underlying the offenses is unitary, we turn to the evidence presented below in the context of the respective jury instructions. *See Kersey v. Hatch*, 2010-NMSC-020, ¶ 9, 148 N.M. 381, 237 P.3d 683. Here, there was evidence presented that Defendant followed Petra to and from work, drove by her house, stopped at her house, bothered her at work, drove by her family's house, and

9

left presents, cards, and letters for Petra. There was also evidence presented that Defendant accused Petra of drugging and raping him, bearing his child, and keeping his child from him, and he also made similar statements to co-workers.

The jury instruction for stalking under which Defendant was convicted provides, in pertinent part, that the State must prove that "[D]efendant maliciously pursued a pattern of conduct that would cause a reasonable person to feel frightened, intimidated or threatened on more than one occasion by: (a) following Petra Nedimovic . . . ; or (b) placing Petra Nedimovic under surveillance." The harassment instruction provided that the State must prove, in addition to other elements, that "[D]efendant maliciously pursued a pattern of conduct that was intended to annoy or seriously alarm Petra Nedimovic[.]" Although the stalking instruction limits the type of conduct to following or surveillance, there is no similar limitation in the harassment instruction that would limit it to the type of conduct specified by the State on appeal. As a result, it is possible that due to the absence of a factual basis in each of the written instructions that this could have resulted in the jury convicting Defendant of both stalking and harassment based on the same course of conduct. *See generally State v. Cook*, 2006-NMCA-110, ¶ 19, 140 N.M. 356, 142 P.3d 944 (remanding for dismissal of one conviction for tampering with evidence because the instructions did not make clear to the jury which conduct it should consider to support each charge).

We therefore disagree with the State that the conduct supporting Defendant's convictions for stalking and harassment was not unitary.

Accordingly, we proceed to the next step in the double description analysis and address whether the Legislature intended to create separately punishable offenses. To address legislative intent for double description cases, when the statutes at issue do not expressly provide for multiple punishment, this Court applies the *Blockburger* test and compares the elements of the relevant statutes to determine if the Legislature intended multiple punishments. *Swafford*, 112 N.M. at 8-9, 810 P.2d at 1228-29; *see State v. Franco*, 2005-NMSC-013, ¶ 12, 137 N.M. 447, 112 P.3d 1104 (applying the *Blockburger* test to determine legislative intent). If the *Blockburger* test establishes that one statute is subsumed within the other, the inquiry is over and the statutes are the same for double jeopardy purposes—punishment cannot be had for both. However, if each statute requires an element of proof not required by the other, we presume that the Legislature intended to punish the offenses separately. *State v. Almeida*, 2008-NMCA-068, ¶ 9, 144 N.M. 235, 185 P.3d 1085.

This Court previously conducted a comparison of the offenses of harassment and stalking in *State v. Duran* and held that under the facts of that case and previous versions of the statutes, the charge of harassment was subsumed by the stalking charge. 1998-NMCA-153, ¶ 26, 126 N.M. 60, 966 P.2d 768. We therefore held in

11

*Duran* that the defendant could not be convicted of both stalking and harassment for the same course of conduct. *Id.* ("While it is clear that stalking may be committed in several alternative ways, where both harassment and stalking are charged against the same defendant and the two offenses arise out of the same unitary conduct, the offense of harassment is subsumed into the offense of stalking.").

The State contends that the harassment and stalking statutes each require proof of an element that the other does not. This argument was rejected in *Duran*. Although we note that *Duran* was decided based on previous versions of the statutes, we have reviewed the amendments to those statutes and find no basis for distinguishing *Duran*. As a result, we conclude that Defendant's double jeopardy rights were violated. We therefore remand this matter to the district court to vacate Defendant's conviction for harassment.

**Speedy Trial**

Defendant contends that his speedy trial rights as to the aggravated assault charge were violated. We balance four factors to determine whether a speedy trial violation has occurred. The factors to be considered are "(1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant." *State v. Plouse*, 2003-NMCA-048, ¶ 34, 133 N.M. 495, 64 P.3d 522. "In considering each of these factors, we defer to the trial court's factual findings but

review de novo the question of whether Defendant's constitutional right [to a speedy trial] was violated." *State v. Brown*, 2003-NMCA-110, ¶ 11, 134 N.M. 356, 76 P.3d 1113.

**Length of Delay**

Appellate courts consider the length of delay for two reasons: (1) as "a threshold inquiry that triggers the rest of the analysis" and (2) "as part of the balancing test itself." *State v. Stock*, 2006-NMCA-140, ¶ 13, 140 N.M. 676, 147 P.3d 885. We begin with the threshold inquiry.

On March 4, 2008, Defendant was charged with aggravated stalking. He was arrested for that charge the following day and remained incarcerated until sentencing. Defendant was indicted for aggravated stalking on September 9, 2008. His trial commenced on July 27, 2009.

The district court determined that Defendant's aggravated stalking charge is a matter of intermediate complexity, and both parties agree that this determination was correct. As Defendant's speedy trial motion was filed after August 13, 2007, we apply the post-*Garza* time frames. *Garza*, 2009-NMSC-038, ¶ 50. Presumptive prejudice for an intermediate claim is established if the delay exceeds fifteen months. *Id.* ¶ 48.

The State argues that at the hearing on the motion to dismiss, counsel for Defendant stated that the aggravated stalking charge had been pending less than

13

fifteen months, and consequently, the State contends that no presumption of prejudice arises because the delay is less than the fifteen months set forth in *Garza.* On appeal, however, Defendant contends that the delay was more than seventeen months. Neither party explains how the delay was calculated.

We begin our calculation with the date of arrest on March 5, 2008. *See State v. Moreno*, 2010-NMCA-044, ¶ 10, 148 N.M. 253, 233 P.3d 782 (measuring the length of delay from the time of the defendant's arrest). The duration between Defendant's arrest and trial is one year, four months, and twenty-two days, or slightly more than sixteen and one-half months. Accordingly, we conclude that Defendant has established presumptive prejudice; his delay exceeded the threshold by one and one-half months.

"If a court determines that the length of delay is presumptively prejudicial, then it should consider the length of delay as one of four factors in the analysis, none of which alone are sufficient to find a violation of the right." *Garza*, 2009-NMSC-038, ¶ 23 (internal quotation marks and citation omitted). We consider the extent to which the delay stretched beyond the bare minimum required to trigger judicial examination of the claim. *See Doggett v. United States*, 505 U.S. 647, 652 (1992) ("If the accused [shows that the interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay], the court must then consider

14

. . . the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim."). "[T]he greater the delay the more heavily it will potentially weigh against the [s]tate." *Garza*, 2009-NMSC-038, ¶ 24.

As noted, the delay here stretched one and one-half months over the threshold. In its order, the district court failed to address how the length of delay should be weighed. The State claims that this factor should weigh "only slightly against the State." We agree and conclude that the length of delay factor weighs ever so slightly against the State. *See State v. Wilson*, 2010-NMCA-018, ¶ 29, 147 N.M. 706, 228 P.3d 490 (discussing delay stretching five months beyond the bare minimum and concluding that such delay weighs only slightly against the State), *cert. denied*, 2010-NMCERT-001, 147 N.M. 673, 227 P.3d 1055.

**Reasons for the Delay**

We next evaluate the reasons "the government assigns to justify the delay." *Id.* ¶ 30 (internal quotation marks and citation omitted). "[T]he reasons for a period of the delay may either heighten or temper the prejudice to the defendant caused by the length of the delay." *Id.* (internal quotation marks and citation omitted). At Defendant's hearing, the district court identified the causes for the delay. The causes included the State's motion to have Defendant's competency evaluated, a trial setting continuance the State filed, and Defendant's request to have the previous judge

15

assigned to his case excused. The district court determined that the State's concern over Defendant's competency was legitimate and not a delay tactic. Similarly, the court determined that the trial setting continuance was filed for good reason. The initial setting was for only two days but a three-day trial setting was required. Finally, the court determined that the delays caused by Defendant's decision to have the previous judge excused would be held against Defendant.

We agree with the district court that the delay associated with the competency hearing and with the rescheduling of the trial setting should not count against the State. *See Garza*, 2009-NMSC-038, ¶ 27 (stating that valid reasons for delay should not be held against the state). We disagree, however, with the court's conclusion concerning the delay associated with the excusal. That delay should not weigh against Defendant. *See State v. Gallegos*, 2010-NMCA-032, ¶ 18, 148 N.M. 182, 231 P.3d 1124 (declining to hold delay caused by the defendant's request to excuse judge against the defendant); *but see State v. Benavidez*, 1999-NMCA-053, ¶ 35, 127 N.M. 189, 979 P.2d 234 (concluding that the delay associated with judge excusal would weigh neutrally where the state requested to excuse two judges and the defendant requested to excuse one), *vacated in part on other grounds*, 1999-NMSC-041, 128 N.M. 261, 992 P.2d 274. We conclude that the reasons for the delay weigh neutrally.

**Assertion of the Right**

"[T]he defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right." *Garza*, 2009-NMSC-038, ¶ 31 (internal quotation marks and citation omitted). "Generally, we assess the timing of the defendant's assertion and the manner in which the right was asserted." *Id.* ¶ 32. "Thus, we accord weight to the frequency and force of the defendant's objections to the delay." *Id.* (internal quotation marks and citation omitted). "We also analyze the defendant's actions with regard to the delay." *Id.* "[T]he timeliness and vigor with which the right is asserted may be considered as an indication of whether . . . the issue was raised on appeal as afterthought." *Id.*

The Defendant argues, and the State concedes, that this factor weighs in his favor. Defendant adds that this factor should weigh "heavily" in his favor but has provided us with no case law or argument as to why we should do so. Accordingly, we conclude only that this factor weighs in favor of Defendant.

**Prejudice**

In *Garza*, 2009-NMSC-038, ¶ 37, our Supreme Court held that a defendant must show particularized prejudice of the kind against which the speedy trial right is intended to protect. "The United States Supreme Court has identified three interests under which we analyze prejudice to the defendant: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the

17

possibility that the defense will be impaired." *Id.* ¶ 35 (internal quotation marks and citation omitted). "As to the first two types of prejudice, some degree of oppression and anxiety is inherent for every defendant who is jailed while awaiting trial." *Id.* (alterations, internal quotation marks, and citation omitted). Therefore, "we weigh this factor in the defendant's favor only where the pretrial incarceration or the anxiety suffered is undue." *Id.* Furthermore, "[t]he oppressive nature of the pretrial incarceration depends on the length of incarceration, whether the defendant obtained release prior to trial, and what prejudicial effects the defendant has shown as a result of the incarceration." *Id.*

Defendant has the burden to demonstrate and substantiate prejudice. *Id.* ¶¶ 35-37. In the case at bar, Defendant argues that he suffered tremendous prejudice due to his lengthy period of incarceration and the physical, emotional and economic hardships he endured due to the case being prolonged. At the hearing on Defendant's speedy trial motion, Defendant presented evidence that he was incarcerated while awaiting trial; that he was confined to a cell twenty-three hours a day; that the food was inadequate; that he was assaulted; that he lost his job; that his credit was destroyed; and that he had to file for bankruptcy. We note, however, that Defendant was incarcerated on a $10,000 cash bond after violating the conditions of his release on his previous charges. Where a defendant is incarcerated for other conduct, such

18

as other charges, this Court has held that a defendant is not subject to oppressive pretrial incarceration. *State v. Urban*, 2004-NMSC-007, ¶ 17, 135 N.M. 279, 87 P.3d 1061. Furthermore, Defendant has not demonstrated that any anxiety and concern he suffered was at all different from the anxiety and concern inherent in being incarcerated. *See Wilson*, 2010-NMCA-018, ¶ 48 ("Some degree of oppression and anxiety is inherent for every defendant who is jailed while awaiting trial.").

Moreover, the district court concluded that Defendant had not presented any evidence that the delay in this case prejudiced Defendant's ability to present a defense. Nor does Defendant make any argument on appeal that his ability to prepare his defense was impaired. *See Garza*, 2009-NMSC-038, ¶ 36 (stating that prejudice to a defendant's ability to present a defense is the "most serious," but the defendant must still substantiate this type of prejudice). We therefore conclude that Defendant has not met his burden of demonstrating actual prejudice. As a result, we affirm the district court's denial of Defendant's motion to dismiss on speedy trial grounds.

**Balancing**

The total delay in this matter was roughly sixteen and one-half months. As this was an intermediate case, this amounted to a delay of one and one-half months beyond

19

the bare minimum required to trigger judicial scrutiny. We conclude that this degree of delay weighs only slightly in Defendant's favor. The reasons for the delay weigh against neither party. Defendant asserted his right in a timely fashion and, therefore, this factor weighs against the State and in Defendant's favor. Finally, Defendant failed to establish prejudice. Under these circumstances, we conclude that Defendant's right to a speedy trial was not violated. *See id.* ¶ 40 (balancing the factors and concluding that there was no speedy trial violation when the defendant failed to show prejudice and the remaining factors did not weigh heavily in the defendant's favor). We affirm the district court's denial of Defendant's motion to dismiss on speedy trial grounds.

**CONCLUSION**

For the reasons stated above, we affirm Defendant's conviction for stalking, criminal trespass, and aggravated stalking, and we remand this matter to the district court to vacate Defendant's conviction for harassment.

**IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**

20

**WE CONCUR:**

_____

**CELIA FOY CASTILLO, Chief Judge**

_____

**JAMES J. WECHSLER, Judge**