1999-NMCA-081

984 P.2d 185

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**William BARR, Jr., Defendant–Appellant.**

No. 18,840.

Court of Appeals of New Mexico.

May 17, 1999.

· Patricia A. Madrid, Attorney General, Joel Jacobsen, Assistant Attorney General, Santa Fe, for Appellee.

Roger Michener, Michener Law Firm, L.L.C., Placitas, for Appellant.

## OPINION

BOSSON, Judge.

{1} Defendant appeals from the trial court judgment and sentence convicting him after a jury trial of two counts of residential burglary, seven counts of contributing to the delinquency of a minor, one count of larceny (over $250 but not more than $2500), and one count of conspiracy to commit residential burglary. Defendant raises three issues on appeal: (1) whether Defendant's double jeopardy rights were violated and the trial court

erred in convicting Defendant of seven counts of contributing to the delinquency of a minor (CDM), and consequently, whether all but one of the convictions should be vacated; (2) whether the trial court erred in refusing jury instructions as to a mistake of fact about the ages of the minors; and (3) whether the testimony of a witness with respect to the valuation of goods in the charge of larceny was inadmissible hearsay and should have been stricken. We affirm.

**FACTS**

{2} On the night of September 6–7, 1996, Defendant, a 31–year–old man, was at a party with some teenagers after a high school homecoming dance in Cloudcroft, New Mexico. At some point in the evening, Defendant and some of the juveniles discussed burglarizing homes and selling the property for cash and drugs. Defendant drove seven juveniles to a residence in Cloudcroft, where at least three of the juveniles and Defendant burglarized the home. Some of the teens stayed in the car. After the stolen items were loaded into Defendant's Suburban van, he drove the juveniles to another residence in Cloudcroft which they also burglarized. They took a flatbed trailer and hitched it up to the Suburban to carry the stolen property. Defendant then drove two or more of the juveniles to El Paso with the stolen property in the trailer and sold it.

{3} The allegations against Defendant were corroborated principally by testimony of several of the seven juveniles involved. Defendant's version of the facts was different; he denied any involvement. He maintained the juveniles were lying about him because it was the easy way out for them. At trial, Defendant presented an alibi defense. Defendant's wife testified that on the night of the burglaries, Defendant was home with her watching TV and sleeping until he left early Saturday morning. Defendant testified to the same effect. Defendant testified that when he got home from work that night there was a "bunch of kids" at his house. They asked if they could have a party at his house. He told them they could not because it would bother the neighbors and his small children. After about an hour and a half, according to Defendant, the teens left and went elsewhere for their party. Defendant also testified that he left early on Saturday morning to look for some of the teenagers that he believed had stolen his large-screen TV during the night. He later found that money was also missing from his house.

{4} At trial, defense counsel sought judicial permission to inquire into the ages of the teens and to put on a defense to the CDM charges arising out of his good-faith mistake of fact about their ages. The State objected on grounds of relevancy. The trial court denied this line of questioning, reasoning that it is not a defense to CDM in New Mexico whether Defendant intended to commit the CDM charges or whether Defendant had a good-faith, reasonable belief that some of the teens had reached their age of majority. In addition, the trial court pointed out that such a defense directly contradicted Defendant's alibi defense. Defendant was allowed to make an offer of proof.

{5} For similar reasons, the trial court refused Defendant's tendered jury instructions on the mistake-of-fact defense, which stated as to five of the juveniles that "[e]vidence ha[d] been presented" that Defendant reasonably "believed that [name of juvenile] was over 18 years of age." These instructions were also refused because the evidence at trial did not support them. For lack of legal support, the trial court also refused a tendered jury instruction putting the burden on the State to prove that Defendant acted intentionally when he committed the CDM crimes.

{6} Over defense counsel's arguments that the seven counts of CDM should be merged into one, the trial court submitted to the jury seven separate elements instructions on the CDM charges, each having a separate name of the respective juvenile and tailored to the different levels of activity Defendant had engaged in with each juvenile. Four of the CDM instructions charged Defendant with "taking [name of child] to the scene where a Residential Burglary was committed" and "caus[ing] or encourag[ing] the child to conduct [himself/herself] in a manner injurious to [his/her] morals[.]" The other three CDM instructions relate specifically to the three juveniles with whom Defendant is al-

leged to have entered the houses, the two juveniles with whom he drove to El Paso to dispose of the stolen property, and one juvenile to whom he allegedly distributed cocaine.

{7} The jury convicted Defendant on all seven counts of CDM, as well as two counts of residential burglary, one count of larceny (over $250 but not more than $2500), and one count of conspiracy to commit residential burglary. The trial judge sentenced Defendant to one and a half years for each CDM conviction plus one year prior felony enhancement on each (2½ years each), running three of Defendant's seven CDM convictions concurrently to each other (Counts III, IV and V) and running the four other CDM convictions concurrently to each other (Counts VI, VII, VIII and IX), and the two sets of concurrent sentences consecutive to each other, for a total of five years on all CDM charges.

{8} The trial judge disagreed with Defendant's merger argument. Because the jury had convicted Defendant of each of the seven CDM charges relating to seven separate individuals, the court found "that Defendant committed seven offenses" and that he chose "as a matter of his [sentencing] discretion to run three concurrent with one another and four concurrent with one another and those three and those four consecutively with one another." Defendant was sentenced to a total of eighteen years confinement, including the five years for the CDM convictions. The trial judge suspended six years of the sentence for a total of twelve years confinement, plus parole and probation periods.

## DISCUSSION

### The Seven CDM Convictions

{9} Relying on *State v. Cuevas*, 94 N.M. 792, 792, 617 P.2d 1307, 1307 (1980), *overruled on other grounds by State v. Pitts*, 103 N.M. 778, 780, 714 P.2d 582, 584 (1986), Defendant contends that the trial court erred in convicting and sentencing him for seven counts of CDM, and therefore, all but one of the convictions and sentences should be vacated. In *Cuevas*, a high school teacher was invited to a party given by a minor student at her parents' house while her parents were away. *See id.* Liquor was provided by the student. *See id.* The teacher was charged,

convicted, and sentenced to three counts of CDM for teaching a group of twenty students to drink tequila with a lemon and generally encouraging the group to imbibe. *See id.* at 794, 617 P.2d at 1309. The Supreme Court noted that it was unclear why the defendant had not been charged with and convicted of twenty counts, one for each member of the audience. *See id.* The Supreme Court relied on what it called "policy considerations" to conclude that three convictions were "excessive" for what amounted to one continuous act of CDM, perpetrated at one place and at one time, with a uniform intent and effect in regard to all twenty minors. *See id.* The rationale for the Court's holding is not clear. Applying the *Cuevas* "policy considerations," Defendant asks us to reduce his convictions for CDM from seven to one.

{10} The State responds that *Cuevas* does not control the outcome of this case because the policy analysis of *Cuevas* has been "overtaken" by the two-part double jeopardy test set forth in *Swafford v. State*, 112 N.M. 3, 810 P.2d 1223 (1991). Under *Swafford*, the double jeopardy clause prohibits multiple punishment in the same trial of a single defendant if (1) conduct underlying the offenses is unitary; that is, the same conduct violates both statutes, and (2) the legislature did not intend separately punishable offenses. *See id.* at 13, 810 P.2d at 1233. Applying the *Swafford* test to the facts of *Cuevas* today, the State argues, would lead to the same result, because there was unitary conduct in *Cuevas* (a single demonstration of illegal drinking to a group of twenty minors), and there was no evidence the legislature intended the "excessive" punishment of twenty separate convictions. In contrast, applying *Swafford* to the case before us, the State notes that Defendant's conduct was not unitary (two separate burglaries plus a trip to El Paso), and no "policy" supports merging Defendant's seven CDM convictions into one. We agree with the State's conclusion, but arrive at it through a somewhat different analysis.

{11} *Swafford* applied the two-part test to the "double-description cases"; that is, when a defendant is charged with violations

of multiple statutes that may or may not be deemed the same offense for double jeopardy purposes. *See id.* at 7–8, 810 P.2d at 1227–28. In this case, Defendant was convicted of multiple counts of the *same* criminal statute, CDM. Thus, we are concerned with a different facet of the multiple punishment doctrine, the single-statute, "unit of prosecution" cases. *See id.* at 8–10, 810 P.2d at 1228–30. In such instance, the accused is charged with multiple violations of a single statute, committed against either single or multiple victims, based on what may or may not be deemed a single course of conduct. *See id.* at 10, 810 P.2d at 1230.

■ {12} We note that if there is a double jeopardy problem with the multiple counts and convictions, it is not solved by the trial court imposing concurrent sentences for the multiple convictions. As the Supreme Court explained in *State v. Pierce*, 110 N.M. 76, 87, 792 P.2d 408, 419 (1990), a separate conviction is itself punishment that has potential adverse consequences. Thus, in this case, the seven CDM counts and seven CDM convictions constitute a multiple punishment issue under the Double Jeopardy Clause, even if most of the sentences were run concurrently and only two consecutive sentences were imposed. *See State v. Contreras*, 120 N.M. 486, 492, 903 P.2d 228, 234 (1995).

{13} "'[T]he *only* function the Double Jeopardy Clause serves in cases challenging multiple punishments is to prevent the prosecutor from bringing more charges, and the sentencing court from imposing greater punishments, than the Legislative Branch intended.'" *Pierce*, 110 N.M. at 84–85, 792 P.2d at 416–17 (quoting *Whalen v. United States*, 445 U.S. 684, 697, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980) (Blackmun, J., concurring)). As recognized in *Herron v. State*, 111 N.M. 357, 359, 805 P.2d 624, 626 (1991), "[t]he issue, though essentially constitutional, becomes one of statutory construction." In *Herron*, the Supreme Court adopted a legislative intent analysis and guidelines for determining distinctiveness factors under the facts of a case when a defendant has been charged with multiple violations of a single statute. *See id.* at 361, 805 P.2d at 628.

■ {14} In determining legislative intent, sometimes the statutory language clearly defines the unit of prosecution. *See, e.g., State v. Borja–Guzman*, 121 N.M. 401, 405, 912 P.2d 277, 281 (Ct.App.1996) (rule of lenity held inapplicable where statutory language clearly defines a unit of prosecution to be an act of delivering controlled substances to another). When the statutory language is not clear, however, courts have developed the "rule of lenity" to assist in resolving ambiguous legislative intent. *See Herron*, 111 N.M. at 361, 805 P.2d at 628. The rule of lenity is often applied to unit-of-prosecution cases and means that if the legislature " 'does not fix the punishment for a[n] ... offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses.' " *Id.* (quoting *Bell v. United States*, 349 U.S. 81, 84, 75 S.Ct. 620, 99 L.Ed. 905 (1955) and citing *State v. McGuire*, 110 N.M. 304, 308, 795 P.2d 996, 1000 (1990) (courts should not presume that the legislature intended to pyramid punishments for the same act absent clear indication to the contrary)); *see also Swafford*, 112 N.M. at 9–10, 810 P.2d at 1229–30 (discussion of rule of lenity as "well established" in single-statute, unit-of-prosecution cases).

■ {15} Applying the rule of lenity in a case of ambiguous legislative intent, the Supreme Court in *Herron* concluded as a matter of law that it could not say that the statute evinced a legislative intent to punish separately each penetration occurring during a continuous sexual attack *"absent proof that each act of penetration is in some sense distinct from the others." Herron*, 111 N.M. at 361, 805 P.2d at 628 (emphasis added). Thus, if the defendant commits "discrete acts violative of the same statutory offense, but separated by sufficient indicia of distinctness, then a court may impose separate, consecutive punishments for each offense." *Swafford*, 112 N.M. at 13, 810 P.2d at 1233. With a sufficient showing of distinctness, application of the rule of lenity would not be required. *See id.*

{16} These "indicia of distinctness" include the separation between the illegal acts by either "time or space" (physical distance), "the quality and nature" of the individual

acts, and "the objects and results" of each act. *See id.* at 13–14, 810 P.2d at 1233–34. In determining whether an act is distinct in the specific context of a unit-of-prosecution case, the *Herron* Court looked at the following factors: (1) temporal proximity of the acts; (2) location of the victim(s) during each act; (3) existence of an intervening event; (4) sequencing of acts; (5) defendant's intent as evidenced by his conduct and utterances; and (6) the number of victims. *See Herron,* 111 N.M. at 361, 805 P.2d at 628. *Herron* involved multiple acts on one victim. The Court noted that "multiple victims will likely give rise to multiple offenses." *Id.* That factor is especially important to our case.

 {17} Applying the principles of the *Herron* line of cases to the CDM statute and the multiple CDM charges in this case, we examine legislative intent and consider any distinctness factors applicable under the facts of this case. Initially, we observe that no New Mexico case has applied the *Herron* legislative intent analysis and distinctiveness factor guidelines to the CDM statute. *See* NMSA 1978, § 30-6-3 (1990). The statute for contributing to the delinquency of a minor reads as follows:

> Contributing to the delinquency of a minor consists of any person committing any act or omitting the performance of any duty, which act or omission causes or tends to cause or encourage the delinquency of any person under the age of eighteen years.

> Whoever commits contributing to the delinquency of a minor is guilty of a fourth degree felony.

The purpose of the CDM statute is "to protect children from harmful adult conduct." *Cuevas,* 94 N.M. at 794, 617 P.2d at 1309 (citing *State v. Favela,* 91 N.M. 476, 477, 576 P.2d 282, 283 (1978), *overruled on other grounds by Pitts,* 103 N.M. at 780, 714 P.2d at 584). Under the language of the CDM statute, contributing to the delinquency of "a minor" means "any person" committing "any act" which causes or tends to encourage the delinquency of "any person" under the age of 18. The language of the statute appears to evince an intent to punish each act affecting each minor. There is no express statement by the legislature, however, as to the specific unit of prosecution. As such, consistent with the *Herron* analysis, we apply the rule of lenity against multiple punishments, unless there exist indicia of distinctness among Defendant's CDM acts with the various minors under the facts of the case. *See, e.g., Herron,* 111 N.M. at 361, 805 P.2d at 628.

{18} At least three discrete incidents or acts took place in this case (the two burglaries and the trip to El Paso). Under *Herron,* at least three separate counts for CDM are clearly permitted. In addition, the presence of multiple victims in this case is the most salient distinctness factor which, as indicated in *Herron,* "will likely give rise to multiple offenses." *Id.* at 361, 805 P.2d at 628. The multiple victims in the present case are strong evidence of distinctness. As evidenced by *Cuevas,* however, the presence of multiple victims is not always enough. We must subject the facts of this case to closer examination.

{19} The State's case presented the testimony of each of the seven juveniles, and the jury was instructed separately with respect to CDM for each of them. The jury found distinct and separate CDM acts perpetrated by Defendant with respect to each juvenile. The separate jury instructions for each of the seven minors varied to some degree according to the particular juvenile. In some instances, Defendant was charged with taking the minor to the scene of a residential burglary; in others he was charged with that and then taking the minor to El Paso. In the case of some juveniles, Defendant was charged with having "caused or encouraged the [identified] child to commit" certain offenses such as residential burglary. In others, Defendant was only charged with having "caused or encouraged the [identified] child to conduct [himself or herself] in a manner injurious to [his or her] morals[.]" In addition, Defendant was accused and found guilty of conspiring with some or all the juveniles to commit residential burglary. As we have noted, Defendant committed these burglaries and the trip to El Paso using different combinations of juveniles from the group of seven.

{20} In sum, certain of the criminal acts were separated in time and space from each

other, they involved separate objectives and effects, and they involved different combinations of the seven juveniles. We conclude that the distinctness factors of *Herron* justify separate counts of the same statute for the separate, individual juveniles.

{21} The *indicia of distinctness* in this case stand in marked contrast to those in *Cuevas*. There, the school teacher performed one act of drinking in front of twenty juveniles who were passive witnesses. *See Cuevas*, 94 N.M. at 792, 617 P.2d at 1307. The opinion does not indicate any differences in the interplay between the teacher and individual juveniles. There was one continuous act of CDM perpetrated at one place and at one time, with a uniform intent and effect in regard to the defendant's conduct with all twenty minors. No one juvenile was treated any differently; none appear to have engaged, or been encouraged to engage, any more or less than any others in the illegal drinking. *See id.* In *Cuevas*, there were no indicia of distinctness other than the pure fact of multiple victims. Also, we note the differences in the "quality and nature of the acts" by contrasting the offenses in the present case with the arguably less serious infractions in *Cuevas*. *See Swafford*, 112 N.M. at 14, 810 P.2d at 1234.

{22} Contrary to the suggestion of the State on appeal, we believe *Cuevas* remains good law and has not been "overtaken." But it must be seen through the filter of *Swafford* and *Herron*. In the absence of some indication of legislative intent, the rule of lenity will still favor a single unit of prosecution and disfavor multiple units of prosecution. The presence of *Herron* distinctness factors, in this case, allows us to determine that the acts are sufficiently discrete. As indicated in *Herron*, multiple victims are strong evidence of distinctness, but there is still room for situations like *Cuevas* in which "[m]ultiple [victims] alone will not support multiple convictions." *Brown*, 113 N.M. at 634, 830 P.2d at 186.

{23} Under the circumstances of this case, therefore, we affirm the trial court's submission of seven separate elements instructions to the jury relating to the seven juveniles; this did not violate Defendant's

rights against double jeopardy. We also affirm the jury's conviction of Defendant on seven, separate counts of CDM, and the trial court's sentencing of Defendant to seven sentences.

### Mistake-of-fact Defense to CDM Charges

■ {24} Defendant urges us to adopt a change in our law to the effect that a good-faith mistake of fact regarding the ages of minors should be a defense to CDM in New Mexico under the same rationale stated in *Perez v. State*, 111 N.M. 160, 803 P.2d 249 (1990), with regard to statutory rape. *See id.* at 162–63, 803 P.2d at 251–52 (reversing conviction for statutory rape to allow the defendant to present mistake-of-fact defense to charges involving victims between the ages of 13 and 16). Defendant relies on the common-law principle of "mens rea" to argue that it is a "good defense to have had an honest and reasonable belief in the existence of circumstances that, if true, would make the act for which the person is indicted an innocent act." *Id.* at 161, 803 P.2d at 250. Defendant asks us to declare outdated the case of *State v. Gunter*, 87 N.M. 71, 72, 529 P.2d 297, 298 (Ct.App.1974) (the legislature did not intend that criminal intent be an element of CDM, and therefore, it does not matter what the accused knows about the ages of the juveniles). Defendant contends he was denied the right to make a mistake-of-fact defense, that it was error for the trial judge to refuse to instruct the jury with respect to mistake of fact and the need to prove Defendant's intent to commit CDM, and that he should be given a new trial.

■ {25} We need not confront Defendant's theories directly, or his invitation to reexamine *Gunter*, or the potential application of *Perez*. A trial court is not required to give an instruction which the evidence does not support. *See State v. Vallejos*, 1996–NMCA–086, ¶ 32, 122 N.M. 318, 924 P.2d 727, *aff'd in part & rev'd in part*, 1997–NMSC–040, ¶ 2, 123 N.M. 739, 945 P.2d 957.

{26} Our review of the record indicates that at trial Defendant referred to these juveniles as "a bunch of kids" and "a bunch

of juveniles." He testified that a "bunch of kids" were at his house when he got home from work on Friday, September 6, 1996, and that he knew the name of three of the "kids" but that "a bunch of other juveniles" were also present at his house. He also testified that he knew it was the night of the high school homecoming dance and that "a couple of girls had prom dresses on" and that "there were three boys in suits" with "the rest dressed normal, everyday." Even Defendant's offer of proof failed to elicit potential evidence from Defendant or any of the juveniles that he was confused or had been misled about their ages. In short, there was no evidence or offer of proof that Defendant considered the ages of the children or was mistaken about their ages or was misled by them in connection with committing these crimes. Under the facts of this case, Defendant did not lay an adequate predicate either for a jury instruction on mistake of fact or for our reconsideration of the law on CDM intent. *See State v. Ho'o*, 99 N.M. 140, 146, 654 P.2d 1040, 1046 (Ct.App.1982) (although an accused is entitled to jury instruction on his theory of the case if the evidence exists to support it, the court is not required to give an instruction which has no foundation in the facts).

{27} In addition, at trial Defendant relied extensively on an alibi defense. *See State v. Wilson*, 117 N.M. 11, 15, 868 P.2d 656, 660 (Ct.App.1993) (because the defendant offered the defense of an alibi, he was not entitled to a lesser-included offense instruction on the ground that the jury might have rejected some of the complainant's testimony because that view of the evidence would have required undue fragmentation of it). Defendant and his wife testified that the juveniles lied about his involvement in the crimes, and they both testified they were home together that night watching a movie and sleeping. Defendant's own theory of the case directly conflicts with what he now offers as a purported defense; he now says that although he was not there, if he was there, he was confused because he reasonably believed that at least five of them were not minors. *See, e.g., State v. Arias*, 115 N.M. 93, 96, 847 P.2d 327, 330 (Ct.App.1993) (in deciding whether an instruction is appropriate, the trial court does not weigh the evidence but determines whether substantial evidence has been offered to support it), *overruled on other grounds by State v. Abeyta*, 120 N.M. 233, 242, 901 P.2d 164, 173 (1995).

### Testimony of Burglary Victim as to the Value of Goods Taken

■ {28} Defendant was charged in Count X of the indictment with larceny of over $250 but not more than $2500. Defendant contends that the testimony of Mrs. Evans, one of the victims, with respect to the valuation of goods was inadmissible hearsay. Defendant contends that the values offered in Mrs. Evans' testimony were given to her by third parties, ladies who run garage sales, who never saw the actual goods that were taken and who were not qualified as experts or especially knowledgeable in evaluating such goods. Defendant admits that defense counsel did not object to Mrs. Evans' testimony and obliquely raises an ineffective assistance of counsel claim by stating that there was "no plausible tactical strategy in failing to object to inadmissible evidence establishing an essential element of the crime [of larceny]." *See State v. Talley*, 103 N.M. 33, 35–36, 702 P.2d 353, 355–56 (Ct.App.1985) (discussing the ineffective assistance of counsel). Defendant concludes that value, an essential element of the larceny charge, remains unproven and that this conviction, therefore, should be overturned.

{29} Mrs. Evans testified that the following items were stolen from her Cloudcroft home: a Kirby vacuum cleaner, a video cassette recorder, a Panasonic microwave oven, a handmade quilt and handmade afghan, both over forty years old, two lamps, a telephone, an electric heater, and small collectible boxes and bottles. Mrs. Evans then testified as to the purchase price of the stolen items and the age and condition of the property. As owner of the stolen property, Mrs. Evans also testified to her belief, based on personal knowledge, with regard to the replacement costs of some of the stolen items. She testified as to statements made by other persons about the garage sale value of the property. Defense counsel made no objections to Mrs. Evans' testimony, and during cross-examination Mrs. Evans stated

her opinion that the garage sale prices tended to be on the low side of the current value. The trial court accepted Defendant's jury instruction on larceny over $250 but not more than $2500, as well as a jury instruction on the lesser-included misdemeanor offense of larceny over $100 but not more than $250. The jury convicted Defendant of felony larceny in the larger range.

{30} Mrs. Evans' testimony of the purchase price of consumer goods, when coupled with information about the age and condition of the goods, is sufficient by itself to allow a jury to draw reasonable inferences about the present market value of the items. *See State v. Hughes*, 108 N.M. 143, 145–46, 767 P.2d 382, 384–85 (Ct.App.1988) ("It is clear that an owner of personal property may testify concerning the value of the property and that such testimony is sufficient to support a jury's determination of value."); *State v. Phillips*, 83 N.M. 5, 8, 487 P.2d 915, 918 (Ct.App.1971) (same). Based on Mrs. Evans' clearly admissible testimony, the jury could reasonably conclude that the aggregate current market value of the items easily surpassed the $250 threshold. We hold, therefore, that there was sufficient admissible testimony by the owner of the goods to support the conviction.

{31} Even if some of Mrs. Evans' testimony was inadmissible hearsay, defense counsel's failure to object means the issue was not properly preserved for appellate review. *See* Rule 12–216 NMRA 1999; *see also State v. Lucero*, 104 N.M. 587, 590, 725 P.2d 266, 269 (Ct.App.1986) (to preserve an issue for appeal, appellant must make a timely objection that specifically apprises the district court of the nature of the claimed error and evokes a ruling thereon). Moreover, Defendant has not made a prima facie showing that defense counsel's failure to object constituted ineffective assistance of counsel that would warrant remand or reversal. *See State v. Gonzales*, 113 N.M. 221, 229–30, 824 P.2d 1023, 1031–32 (1992) (assistance of counsel is presumed effective unless the defendant demonstrates both that counsel was not reasonably competent and that counsel's incompetence caused the defendant prejudice); *State v. Powers*, 111 N.M. 10, 11–12, 800 P.2d 1067, 1068–69 (Ct.App.1990) (in order to show ineffective assistance of counsel,

counsel's performance must have been below the level of a reasonably competent attorney, and such performance must have prejudiced the defendant in such an extreme way that the adversarial process cannot be relied on as having produced a just result); *State v. Rodriguez*, 107 N.M. 611, 615, 762 P.2d 898, 902 (Ct.App.1988) (the inquiry regarding ineffective assistance of counsel is whether defense counsel exercised the skill, judgment, and diligence of a reasonably competent defense attorney).

{32} Ineffective assistance is not necessarily established even when there is a showing of improvident strategy or unsuccessful tactics. *See State v. Orona*, 97 N.M. 232, 234, 638 P.2d 1077, 1079 (1982) (bad tactics and improvident strategy do not necessarily amount to ineffective assistance of counsel). In this case, based on Mrs. Evans' clearly admissible testimony, the jury could reasonably infer that the value of the stolen items easily exceeded the low $250 threshold. Under these circumstances, at trial it would not have been unreasonable for defense counsel to make a strategy decision to forego an objection so as not to appear to be quibbling before the jury about a matter so easily proven. In addition, the trial court instructed the jury on the lesser-included offense of misdemeanor larceny in the event the jury determined that the current market value of the stolen property was between $100 and $250. Defendant has failed to make the requisite prima facie showing that he received ineffective assistance of counsel, or that he suffered any prejudice by way of showing a reasonable probability that exclusion of the alleged hearsay would have likely led the jury to convict Defendant of misdemeanor larceny alone. *See Powers*, 111 N.M. at 11–12, 800 P.2d at 1068–69.

## CONCLUSION

{33} We affirm.

{34} **IT IS SO ORDERED.**

PICKARD, C.J., and APODACA, J., concur.