This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                                  **NO. 30,252**

**REYNALDO JEREMY ENRIQUEZ,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Teddy L. Hartley, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**FRY, Judge.**

Defendant was convicted by a jury on several crimes following a late night residential burglary. Defendant raises several issues on appeal, including the

sufficiency of the evidence, a double jeopardy argument, prosecutorial misconduct, and sentencing-related arguments. We vacate the one-year firearm sentencing enhancement on Defendant's conspiracy conviction. We also reverse the designation of Defendant's convictions in Counts I through V as serious violent offenses, and we remand for the district court to consider and enter appropriate factual findings as to whether Defendant's second degree kidnaping and aggravated assault convictions were serious violent offenses. We affirm on all other issues.

**BACKGROUND**

Defendant's convictions stem from an incident that occurred in Clovis, New Mexico. On the evening of July 28, 2008, Defendant was partying with a group of individuals at the home of Delia Rodriguez. While there, Defendant and three other individuals, including two minors we refer to as Mark and Oscar, formulated a plan to burglarize a nearby residence where Justin Ford (Victim) was staying. It was Defendant's suggestion that the group rob a house and, specifically, the residence where Victim was staying. Later that same night, Defendant and his three companions left Delia's residence and walked to Victim's residence. Defendant kicked in the door, and all four individuals entered the residence. Victim, who was sleeping on the living room sofa, woke up during the break-in, and a struggle allegedly ensued between Victim and the group members, including Defendant. Victim was struck

twice during the encounter before he was able to run out of the residence. While he was running through the front yard of the property, Defendant shot at him with a .380 caliber semiautomatic pistol. Defendant and his companions then returned on foot to Delia's home.

Police officers were called to the area to investigate the fired shots and came upon Victim, who informed them of the alleged burglary. The officers also found Delia in an alleyway. After accompanying Delia back to her home, the officers entered her residence and discovered Defendant, Mark, and Oscar there. A search warrant was executed at Delia's home, and Defendant was arrested for the burglary. We relate additional facts regarding the foregoing as necessary in our discussion.

A jury convicted Defendant of kidnaping, aggravated burglary with a deadly weapon, conspiracy to commit aggravated burglary with a deadly weapon, two counts of aggravated assault with a deadly weapon, intimidation of a witness, and two counts of contributing to the delinquency of a minor (CDM). A firearm sentencing enhancement was added to each conviction, and Defendant was sentenced to a total term of incarceration of thirty-six-and-a-half years. The district court then suspended six years of the sentence and imposed a term of five years supervised probation. This appeal followed.

**DISCUSSION**

3

Defendant raises six issues on appeal. He argues that: (1) there was insufficient evidence to support his convictions for kidnaping and CDM; (2) the district court improperly applied firearm sentencing enhancements to his convictions for conspiracy and CDM; (3) the district court erred in designating five of his convictions as serious violent offenses; (4) his CDM convictions violate constitutional prohibitions against double jeopardy; (5) he was deprived of a fair trial due to prosecutorial misconduct during opening and closing statements; and (6) a probationary term was improperly included in the written judgment and sentence. We address each of these issues in turn.

I.    **Sufficiency of the Evidence**

Defendant contends that there was insufficient evidence to support his convictions of kidnaping and CDM. With respect to the kidnaping conviction, he argues that the State failed to present any evidence establishing that Defendant "restrained or confined [Victim] in any way." As for his two CDM convictions, Defendant contends that the State failed to present sufficient evidence of his culpability because it failed to show that he caused or encouraged the two minors, Oscar and Mark, to commit criminal acts.

"The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a

4

reasonable doubt with respect to every element essential to a conviction." *State v. Riley*, 2010-NMSC-005, ¶ 12, 147 N.M. 557, 226 P.3d 656 (internal quotation marks and citation omitted). We view "the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "We determine whether a rational fact[]finder could have found that each element of the crime was established beyond a reasonable doubt." *State v. Kent*, 2006-NMCA-134, ¶ 10, 140 N.M. 606, 145 P.3d 86. The sufficiency of the evidence is assessed against the jury instructions because they become the law of the case. *State v. Smith*, 104 N.M. 729, 730, 726 P.2d 883, 884 (Ct. App. 1986).

**Kidnaping Conviction**

In order to convict Defendant of kidnaping, the jury was required to find beyond a reasonable doubt that: (1) Defendant restrained or confined Victim by force or intimidation; (2) Defendant intended to hold Victim against Victim's will to inflict death, physical injury, or a sexual offense on Victim; and (3) this occurred on or between July 28 and July 29, 2008.

Defendant contends that the State failed to present evidence establishing that he restrained or confined Victim. We disagree. As we observed in *State v. Pisio*, "[t]he key to the restraint element in [kidnaping] is the point at which [the v]ictim's

physical association with [the d]efendant was no longer voluntary." 119 N.M. 252, 260, 889 P.2d 860, 868 (Ct. App. 1994). In this case, Victim testified that during the break-in, one of the individuals ran up to him, put a gun to his face, and told two other individuals to "wrap [Victim] up in a sheet." A rational jury could find that at the moment the gun was pointed at Victim, the restraint necessary for the kidnaping occurred because the association between Victim and the gunman was now clearly involuntary. In addition, Mark, one of Defendant's companions that evening, testified at trial that Defendant had a firearm before they entered Victim's home. Evidence was also presented at trial that Defendant shot at Victim with a firearm immediately after Victim ran out of the residence. Because Defendant had the gun immediately prior to the break-in and after Victim ran out of the residence minutes later, a jury could reasonably infer from this evidence that Defendant was the individual inside the residence who restrained Victim by pointing a gun at his face with the intent to hold Victim against his will. *Cf. State v. Foster*, 1999-NMSC-007, ¶ 32, 126 N.M. 646, 974 P.2d 140 (noting that "[o]nce a defendant has restrained the victim with the requisite intent to hold [the victim] . . . against [his] will, he has committed the crime of [kidnaping], although the [kidnaping] continues throughout the course of the defendant's other crimes") (alterations, internal quotation marks, and citation

6

omitted), *abrogated on other grounds by Kersey v. Hatch*, 2010-NMSC-020, 148 N.M. 381, 237 P.2d 683.

In addition, the jury was instructed on accessory liability—that Defendant could be found guilty of a crime that he himself did not do if he intended "that the crime [to] be committed; [t]he crime was committed; and [D]efendant helped, encouraged[,] or caused the crime to be committed." Mark testified that after the group entered Victim's residence, he blocked the front door to the residence to prevent Victim from leaving. He further testified that when Victim got up from the living room sofa, all of the group, including Defendant, "tried to stop him" and that some of them were able to grab Victim to prevent him from leaving. Victim was also struck twice in the process of trying to leave the residence, once with a firearm and the second time with a wooden board used by Mark near the front door to stop Victim from leaving. A rational jury could find based on the events inside the residence that the group acted together to restrain Victim with the intent to hold him against his will. Based on the foregoing, we hold that there was sufficient evidence to support Defendant's conviction for kidnaping under either a principal or an accessory theory.

**CDM Convictions**

Defendant also contends that there was insufficient evidence to support his two convictions of CDM. To convict Defendant of CDM as to Mark, the jury was

7

required to find that (1) Defendant "encouraged or enlisted the help of Mark . . . in committing various criminal offenses"; (2) "[t]his caused or encouraged Mark . . . to conduct himself in a manner injurious to his morals or welfare"; (3) "Mark . . . was under the age of 18"; and (4) this occurred on or between July 28 and 29, 2008. A similar CDM instruction was given for Oscar.

With respect to both minors, evidence was presented that Defendant made the initial suggestion that he and the minors burglarize Victim's residence and that he formulated a plan for the burglary with both Oscar and Mark. Defendant also went with the minors to Victim's residence and facilitated the burglary by kicking in the door to Victim's residence. It was reasonable for a jury to infer from these actions that Defendant caused or encouraged the minors to act in a manner injurious to their welfare or morals. *See State v. Henderson*, 116 N.M. 537, 539, 865 P.2d 1181, 1183 (1993) (noting that "encouraging conduct by a minor that is injurious to the health, morals, or welfare of minors has long constituted the offense of CDM in New Mexico"), *overruled on other grounds by State v. Meadors*, 121 N.M. 38, 908 P.2d 731 (1995). We therefore conclude that sufficient evidence was presented to support the CDM convictions. *See State v. Post*, 109 N.M. 177, 181-82, 783 P.2d 487, 491-92 (Ct. App. 1989) (sufficient evidence of CDM where the defendant accompanied his

minor son to a high school, helped the son commit arson at the school, and took no action to stop his son).

**II.     Firearm Sentencing Enhancements**

Defendant argues that it was error for the district court to apply a firearm sentencing enhancement to his convictions for conspiracy and CDM. The State concedes, and we agree, that the district court erroneously imposed a firearm enhancement on Defendant's conspiracy conviction. This Court previously held that a firearm sentencing enhancement does not apply to the initiatory offense of conspiracy. *State v. Padilla*, 118 N.M. 189, 193, 879 P.2d 1208, 1212 (Ct. App. 1994). We therefore vacate the one-year firearm enhancement on Defendant's conviction for conspiracy to commit aggravated burglary with a deadly weapon.

Defendant also argues that the district court erroneously added a firearm sentencing enhancement to his CDM convictions. As we understand his argument on appeal, Defendant contends that the firearm enhancements on these convictions were improper because no firearm was used to commit the acts constituting CDM. We interpret this as an argument challenging the sufficiency of the evidence to support the enhancements.

The jury was instructed that if it found Defendant guilty of CDM, it "must determine if the crimes were committed with the use of a firearm" and complete a

special verdict form indicating its finding. The jury completed special verdict forms indicating that a firearm was used in the commission of CDM as charged in Counts VII and VIII. There was evidence that Defendant had a firearm before the group entered Victim's home, that he held the firearm while threatening Victim and asking his companions to tie Victim up in a bed sheet, and that he shot at Victim after Victim ran out of the house. Viewing the evidence in the light most favorable to the firearm enhancement verdicts, it was reasonable for the jury to infer that Defendant used a firearm to encourage or cause the minors to commit criminal offenses.

To the extent Defendant argues that we should apply the reasoning in *Padilla* to CDM, we are not convinced. Although Defendant contends that, like conspiracy, no overt act is required for the commission of CDM, he provides no explanation or authority, either in the language of the CDM statute or in case law, supporting his proposition. And we are not persuaded that his single-sentence argument—that "the gist of the crime is causing or encouraging delinquency of a child"—overcomes the language of NMSA 1978, Section 30-6-3 (1990), which provides that CDM consists of "committing any *act* or omitting the performance of any duty, which *act* or omission causes or tends to cause or encourage the delinquency of any person under the age of eighteen years." (Emphasis added.) We therefore affirm the firearm sentencing enhancements on Defendant's CDM convictions.

## III. Serious Violent Offenses

Defendant argues that the district court erred in designating five of his convictions as serious violent offenses pursuant to NMSA 1978, Section 33-2-34 (2006), the Earned Meritorious Deductions Act (EMDA). We review a district court's decision to designate a defendant as a violent offender under the EMDA for abuse of discretion. *See State v. Lavone*, 2011-NMCA-084, ¶ 5, 150 N.M. 473, 261 P.3d 1105.

"The EMDA governs the eligibility for and award of good time credits in our state prisons." *State v. Tafoya*, 2010-NMSC-019, ¶ 2, 148 N.M. 391, 237 P.3d 693. The EMDA designates certain crimes as serious violent offenses. Section 33-2-34(L)(4). It also enumerates additional offenses that may be designated as serious violent offenses at the discretion of the sentencing court. Section 33-2-34(L)(4)(o). Under the provisions of the EMDA, a defendant is eligible to earn only four days a month of credit against his time in prison, as opposed to thirty days a month, if the crime of which he is convicted is designated as a serious violent offense. Section 33-2-34(A)(1).

In the present case, the district court designated Defendant's convictions for second degree kidnaping (Count I), aggravated burglary with a deadly weapon (Count II), conspiracy to commit aggravated burglary with a deadly weapon (Count III), and two counts of aggravated assault with a deadly weapon (Counts IV and V) as serious

11

violent offenses in the written judgment and sentence. On appeal, Defendant maintains that the serious violent designation as to each of these counts was erroneous. We therefore review the district court's application of the EMDA to each of these convictions.

**Aggravated Burglary (Count II) and Conspiracy to Commit Aggravated Burglary (Count III) Convictions**

The crimes of aggravated burglary with a deadly weapon and conspiracy to commit aggravated burglary are not designated as per se serious violent offenses under the EMDA. Section 33-2-34(L)(4). These offenses are also not enumerated as crimes that may be designated as serious violent offenses at the discretion of the sentencing court. Section 33-2-34(L)(4)(o). Our case law is clear that a "defendant's good time eligibility under the EMDA cannot be reduced for a crime that is not enumerated in that statute." *State v. Loretto*, 2006-NMCA-142, ¶ 9, 140 N.M. 705, 147 P.3d 1138; *see, e.g., State v. McDonald*, 2004-NMSC-033, ¶¶ 21, 23, 136 N.M. 417, 99 P.3d 667 (holding that a conspiracy conviction was not subject to earned credit diminution because it is not enumerated as either a per se or a discretionary serious violent offense). On appeal, the State concedes that these two crimes are not enumerated in the EMDA and, thus, they cannot be punished as serious violent offenses. We therefore vacate the district court's designation of Counts II and III as

12

serious violent offenses and hold that these two convictions are not subject to earned credit diminution.

**Second Degree Kidnaping (Count I) and Aggravated Assault (Counts IV and V) Convictions**

Defendant argues that the district court erroneously designated his convictions for second degree kidnaping (Count I) and aggravated assault with a deadly weapon (Counts IV and V) as serious violent offenses. Defendant correctly notes that these two offenses may be construed as serious violent offenses at the discretion of the sentencing court pursuant to Section 32-2-34(L)(4)(o). However, he contends that the district court failed to make the factual findings required in order for the court to exercise its discretion to designate these offenses as serious violent offenses. We agree.

A crime subject to discretionary designation may only be designated as a serious violent offense if "the district court . . . determine[s] that the crime was 'committed in a physically violent manner either with an intent to do serious harm or with recklessness in the face of knowledge that one's acts are reasonably likely to result in serious harm.'" *State v. Solano*, 2009-NMCA-098, ¶ 10, 146 N.M. 831, 215 P.3d 769 (quoting *State v. Morales*, 2002-NMCA-016, ¶ 16, 131 N.M. 530, 39 P.3d 747). In *Morales*, we held that the factual basis for this determination must be articulated in appropriate supported findings by the sentencing court. 2002-NMCA-

016, ¶¶ 17-18. It is important for the district court to "make specific findings both to inform the defendant being sentenced of the factual basis on which his good time credit is being substantially reduced, and to permit meaningful and effective appellate review of the court's designation." *Loretto*, 2006-NMCA-142, ¶ 12. Thus, in order to affirm a court's discretionary designation of a crime as a serious violent offense, we have consistently required the entry of appropriate factual findings consistent with the *Morales* standard. *See, e.g., id.* ¶¶ 11-12 (requiring particular factual findings that the crimes were committed in a physically violent manner with intent to do serious harm in order to support the designation of a discretionary crime as a serious violent offense).

In the present case, aside from the legal conclusion that Defendant's convictions in Counts I through V were serious violent offenses, the written judgment and sentence failed to include any factual findings to support the district court's determination. On appeal, the State concedes that the district court failed to state its reasons for designating these convictions as serious violent offenses. It is not our role to make the required findings for the first time on appeal. *Id.* ¶ 13. We therefore reverse the district court's designation of the convictions for second degree kidnaping (Count I) and aggravated assault (Counts IV and V) as serious violent offenses and remand for reconsideration of this issue and entry of appropriate factual findings. *See*

*id.* ¶¶ 19, 22 (reversing the designation of a CSCM conviction as a serious violent offense where there was "nothing in the record showing what the court relied on that would permit application of the *Morales* standard," and remanding for reconsideration and entry of appropriate factual findings); *see also State v. Scurry*, 2007-NMCA-064, ¶ 1, 141 N.M. 591, 158 P.3d 1034 (reversing the discretionary designation of a crime as a serious violent offense due to insufficient factual findings and remanding for the district court "to ascertain if its determination can be supported by appropriate findings" consistent with *Morales*).

## IV.   Double Jeopardy

Defendant was charged with and convicted of two counts of CDM, with one count based on Mark and the second count based on Oscar. With respect to both minors, the CDM jury instructions stated that Defendant encouraged or enlisted the help of the minor in committing various criminal offenses, that this caused or encouraged the minor to conduct himself in a manner injurious to his morals or welfare, that the minor was under the age of 18, and the incident occurred on or between July 28 and 29, 2008.

On appeal, Defendant asserts that double jeopardy bars his two CDM convictions. We review double jeopardy claims de novo. *State v. Gallegos*, 2011-NMSC-027, ¶ 51, 149 N.M. 704, 254 P.3d 655. "However, where factual issues are

15

intertwined with the double jeopardy analysis, we review the trial court's fact determinations under a deferential substantial evidence standard of review." *State v. Rodriguez*, 2006-NMSC-018, ¶ 3, 139 N.M. 450, 134 P.3d 737. Thus, we do not reweigh the evidence or "substitute our judgment for that of the trial court, and all reasonable inferences supporting the fact findings will be accepted even if some evidence may have supported a contrary finding." *Id.* (citation omitted).

"The constitutional prohibition against double jeopardy protects against both successive prosecutions and multiple punishments for the same offense." *State v. Mora*, 2003-NMCA-072, ¶ 17, 133 N.M. 746, 69 P.3d 256 (internal quotation marks and citation omitted). Defendant asserts in the present case that his multiple convictions under the CDM statute run afoul of the prohibition against double jeopardy. We therefore apply a unit-of-prosecution analysis. *See State v. Bernal*, 2006-NMSC-050, ¶ 7, 140 N.M. 644, 146 P.3d 289 (explaining that "[m]ultiple punishment problems can arise from both 'double-description' claims, in which a single act results in multiple charges under different criminal statutes, and 'unit-of-prosecution' claims, in which an individual is convicted of multiple violations of the same criminal statute").

For unit-of-prosecution cases, we apply the following two-step analysis:

First, we review the statutory language for guidance on the unit of prosecution. If the statutory language spells out the unit of prosecution,

16

then we follow the language, and the unit-of-prosecution inquiry is complete. If the language is not clear, then we move to the second step, in which we determine whether a defendant's acts are separated by sufficient "indicia of distinctness" to justify multiple punishments under the same statute. In examining the indicia of distinctness, courts may inquire as to the interests protected by the criminal statute, since the ultimate goal is to determine whether the legislature intended multiple punishments. If the acts are not sufficiently distinct, then the rule of lenity mandates an interpretation that the legislature did not intend multiple punishments, and a defendant cannot be punished for multiple crimes.

*Gallegos*, 2011-NMSC-027, ¶ 31 (internal quotation marks and citations omitted).

Accordingly, we first evaluate the language of New Mexico's CDM statute, Section 30-6-3, to determine if it delineates the proper unit-of-prosecution.

Section 30-6-3 provides that CDM "consists of any person committing any act or omitting the performance of any duty, which act or omission causes or tends to cause or encourage the delinquency of any person under the age of eighteen years." This Court has previously examined Section 30-6-3 under the first step of a unit-of-prosecution analysis and concluded that the legislature did not include any language within the statute specifying the proper unit of prosecution. *See State v. Barr*, 1999-NMCA-081, ¶ 17, 127 N.M. 504, 984 P.2d 185 (determining that although the statute "appears to evince an intent to punish each act affecting each minor[, t]here is no express statement by the legislature . . . as to the specific unit of prosecution"); *see also State v. Stone*, 2008-NMCA-062, ¶ 20, 144 N.M. 78, 183 P.3d 963 (same).

17

Because the CDM statute fails to provide guidance as to the proper unit of prosecution, we therefore proceed with the second step of our double jeopardy analysis and consider whether Defendant's acts were sufficiently distinct to warrant two counts of CDM. This requires us to apply the factors set out in *Herron v. State*, 111 N.M. 357, 361, 805 P.2d 624, 628 (1991). *See Stone*, 2008-NMCA-062, ¶ 3 (describing *Herron* and its adoption of a number of factors to aid in analyzing whether a defendant's acts are distinct in the context of a unit-of-prosecution case). We analyze whether there are sufficient indicia of distinctness to separate the transaction into several acts by looking at: "(1) temporal proximity of the acts[,] (2) location of the victim(s) during each act[,] (3) existence of an intervening event[,] (4) sequencing of acts[,] (5) [the] defendant's intent as evidenced by his conduct and utterances[,] and (6) number of victims." *Barr*, 1999-NMCA-081, ¶ 16. "[I]f the defendant commits two discrete acts violative of the same statutory offense, but separated by sufficient indicia of distinctness, then a court may impose separate, consecutive punishments for each offense." *Swafford v. State*, 112 N.M. 3, 13, 810 P.2d 1223, 1233 (1991).

Because application of the *Herron* factors is highly fact-dependent, *Stone*, 2008-NMCA-062, ¶ 3, we begin with a detailed factual recitation regarding the events that led to Defendant's convictions. The following facts consist almost entirely of the trial testimony of Victim and Mark, one of the minors involved in the burglary. Mark

18

testified that he was a minor at the time and a member of a gang based in Clovis, New Mexico. In the late evening hours of July 28, 2008, Mark testified that he was with fellow gang members, including Defendant and another minor named Oscar, at the home of Delia Rodriguez. The group was smoking weed and/or drinking alcohol. While at Delia's home, Defendant, Mark, Oscar, and another individual whom we refer to as Alex, began formulating a plan to "rob a house." Mark testified that it was Defendant who made the initial suggestion that they rob a house and, specifically, the residence where Victim was staying. According to Mark, the group's plan was to kick down the door of Victim's residence and if there was "anything nice, to take it."

All four individuals—Defendant, Alex, and the two minors, Mark and Oscar—left Delia's home later that evening to carry out the robbery. They walked over to Victim's residence. Once the group reached Victim's residence, Defendant kicked in the door. Mark positioned himself at the front door near the living room to block the door in case Victim tried to leave while Defendant, Oscar, and Alex all went into the back rooms of the residence. When Defendant and the two others returned to the living room, Mark turned on the light in the living room and spotted Victim sleeping on a sofa. Mark testified that Victim rose from the sofa and attempted to get away, while all four group members "tried to stop him." A struggle ensued as they all "tried to grab" Victim, and Mark testified that he hit Victim in the head with a

19

wooden board as Victim ran out of the residence. Once Victim was in the front yard, Mark stated that Defendant shot at Victim. Victim ran away from the premises, and the group then went back on foot to Delia's home to hide there.

Victim testified that after the living room lights were turned on, one of the individuals ran up to him, put a gun to his face, and told two other individuals who were standing by the kitchen to "wrap [Victim] up in a sheet." According to Victim, they did not attempt to do so because he was already on his feet at this point. He testified that they fought for a bit, that there was a struggle for the gun, and that he was struck twice during the encounter as he made it out of the residence.

Applying *Herron* to this case, we conclude that at least two discrete incidents occurred in this case: (1) the acts at Delia's home where the plan for the burglary was formulated, and (2) those acts that occurred during the course of the actual burglary. That is, Defendant's specific actions with respect to the minors at Delia's home—suggesting the burglary and then helping to plan for it—were separated by time and place from Defendant's actions that took place later in the evening at Victim's residence—his walking to the residence with the minors, facilitating the burglary by kicking in the door, and participating in the burglary. Thus, at least two separate counts of CDM were permitted given these temporal and spatial differences as well the distinct nature of Defendant's actions with respect to the minors at each

20

location. *See Barr*, 1999-NMCA-081, ¶ 18 (determining that at least multiple separate counts of CDM were permitted where there were three discrete acts involving two burglaries and a road trip that were separated in time and space from each other); *see also Bernal*, 2006-NMSC-050, ¶ 16 (noting that time and space considerations help to determine distinctness).

Moreover, there were multiple victims in this case, and we have previously stated that the presence of multiple victims is "the most salient distinctness factor which, as indicated in *Herron*, will likely give rise to multiple offenses." *See Barr*, 1999-NMCA-081, ¶ 18 (internal quotation marks and citation omitted); *see also Stone*, 2008-NMCA-062, ¶ 22. In addition, there were distinct "objects and results" from the activity at Delia's home to that of Victim's residence. *Barr*, 1999-NMCA-081, ¶ 16. At Delia's home, Defendant's actions reflected an intent to encourage and assist the minors in planning a residential burglary, whereas at Victim's residence, the objectives and results changed to include facilitating and participating with the minors to commit other acts including kidnaping and assault during the burglary. Therefore, we conclude that there were sufficient indicia of distinctness to justify the separate counts of CDM in this case.

We also reject Defendant's argument that we should apply *State v. Cuevas* to this case and merge his CDM convictions. 94 N.M. 792, 617 P.2d 1307 (1980),

21

*overruled on other grounds by State v. Pitts*, 103 N.M. 778, 714 P.2d 582 (1986). In that case, a school teacher engaged in one act of drinking in front of twenty minors who were all passive witnesses. *Cuevas*, 94 N.M. at 792, 617 P.2d at 1307. *Cuevas* is distinguishable because it involved "one continuous act of CDM perpetrated at one place and at one time, with a uniform intent and effect in regard to the defendant's conduct with all twenty minors." *Barr*, 1999-NMCA-081, ¶ 21. The facts in this case are distinguishable. In addition to the presence of multiple victims, there were several indicia of distinctness present here. We therefore conclude that the multiple CDM convictions did not violate Defendant's rights against double jeopardy.

**V. Prosecutorial Misconduct**

Defendant argues that some of the prosecutor's remarks during opening and closing statements constituted misconduct that deprived him of a fair trial. Defendant failed to object to the prosecutor's remarks during opening statement and asks us to review that claim for fundamental error. *State v. Allen*, 2000-NMSC-002, ¶ 95, 128 N.M. 482, 994 P.2d 728 ("When the trial court had no opportunity to rule on a claim of prosecutorial misconduct because the defendant did not object in a timely manner, we review the claim on appeal for fundamental error."). However, Defendant did raise an objection to the prosecutor's remarks during closing argument and we therefore review that claim under an abuse of discretion standard of review. *Id.*

("When an issue of prosecutorial misconduct is preserved by a timely objection at trial, we review the trial court's ruling on a claim under the deferential standard of 'abuse of discretion'[.]" (citation omitted)).

**Opening Statement**

During opening statement, the prosecutor remarked that Defendant was "second in command in his gang." Defendant argues that this statement was not supported by evidence at trial and was thus prosecutorial misconduct rising to the level of fundamental error. To qualify as fundamental error, the remarks must have been "so egregious" and have "had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *Id.* "As with any fundamental error inquiry, we will upset a jury verdict only (1) when guilt is so doubtful as to shock the conscience, or (2) when there has been an error in the process implicating the fundamental integrity of the judicial process." *State v. Sosa*, 2009-NMSC-056, ¶ 35, 147 N.M. 351, 223 P.3d 348.

Although we agree that the prosecutor's remark concerning Defendant's rank in the gang was not supported by testimony elicited at trial, we conclude that the remark did not rise to the level of fundamental error. The prosecutor did elicit testimony, without objection from defense counsel, that Defendant was in fact a member of a local Clovis gang as were the others who committed the burglary with

23

him. Moreover, after the prosecutor elicited testimony regarding Defendant's gang membership, the prosecutor did attempt to question Mark regarding Defendant's rank in the gang, but the line of questioning drew an objection from defense counsel. Viewing the prosecutor's remark regarding Defendant's rank in the gang in this context, there is nothing in the record suggesting that this brief remark was made in bad faith, nor was it so egregious that it deprived Defendant of a fair trial. *Allen*, 2000-NMSC-002, ¶ 95 ("An isolated, minor impropriety ordinarily is not sufficient to warrant reversal, because a fair trial is not necessarily a perfect one[.]" (internal quotation marks and citation omitted)); *see id.* ¶ 105 (stating that "while it was a mistake for the prosecutor to predict that a particular piece of evidence would be presented to the jury when in fact it was not, . . . there is nothing indicating bad faith on the part of the prosecutor" in its reference to such evidence (alteration, internal quotation marks, and citation omitted)). Given the substantial evidence in the record to support Defendant's convictions, we conclude that the prosecutor's remark did not have such a persuasive and prejudicial effect that it deprived Defendant of a fair trial.

**Closing Statement**

Defendant also argues that the prosecutor made improper comments regarding Defendant's "currency" in the gang during closing argument. The district court overruled defense counsel's objection to these remarks. On appeal, Defendant

contends that these comments concerning gang culture were unfairly prejudicial and impacted the jury's deliberations.

Our Supreme Court has identified three factors that are key to the determination of appeals centered on improper comments during closing argument:

(1) whether the statement invades some distinct constitutional protection; (2) whether the statement is isolated and brief, or repeated and pervasive; and (3) whether the statement is invited by the defense. In applying these factors, the statements must be evaluated objectively in the context of the prosecutor's broader argument and the trial as a whole.

*Sosa*, 2009-NMSC-056, ¶ 26. "The trial court has broad discretion in controlling the conduct and remedying the errors of counsel during trial" and "is in the best position to evaluate the significance of any alleged prosecutorial errors." *State v. Duffy*, 1998-NMSC-014, ¶ 46, 126 N.M. 132, 967 P.2d 807.

We are unable to conclude that the "prosecutors' comments materially altered the trial or likely confused the jury by distorting the evidence, and thereby deprived the accused of a fair trial." *Sosa*, 2009-NMSC-056, ¶ 34. The prosecutor's comments did not invade any distinct constitutional protection of the sort our appellate courts have previously found to constitute misconduct. *See id.* ¶¶ 27-28 (providing as examples of misconduct a prosecutor's reference to a defendant's post-Miranda silence and a defendant's failure to consent to a search). The comments were also relatively brief because they consumed only about two minutes of a thirty-minute

closing argument. And as we noted above, the comments came after testimony, elicited without objection, regarding Defendant's membership in the gang. We cannot say that the district court abused its discretion by permitting the prosecutor to draw inferences regarding Defendant's state of mind or motive for the burglary from this undisputed evidence. *Cf. State v. Trujillo*, 2002-NMSC-005, ¶¶ 57-58, 131 N.M. 709, 42 P.3d 814 (after noting that evidence of gang membership is admissible to show "other important elements of the crime, such as motive or intent," concluding that it was not error for the prosecutor to rely on undisputed evidence of the defendant's gang membership to draw relevant inferences).

Defendant relies on *State v. Torrez*, 2009-NMSC-029, 146 N.M. 331, 210 P.3d 228, in arguing that the prosecutor's remarks were highly prejudicial. That case does not apply here for two reasons. First, the specific legal issue presented in *Torrez* was the admission of expert testimony regarding gang-related law enforcement and gang culture, a question not presented in this case. *Id.* ¶¶ 10-14. Second, and more significant, no evidence was presented in *Torrez* that the defendant was a gang member or that the alleged crime was gang-related. *Id.* ¶ 26. Thus, that case involved a different factual scenario and legal issue than we are faced with in this case.

We conclude that the prosecutor's remarks during closing argument did not constitute misconduct that deprived Defendant of a fair trial. *Sosa*, 2009-NMSC-056,

26

¶ 25 ("Only in the most exceptional circumstances should we, with the limited perspective of a written record, determine that all the safeguards at the trial level have failed.").

**VI.     Probation Provision in Written Judgment and Sentence**

Defendant contends that the district court improperly included a term of probation in the written judgment and sentence when the court failed to mention probation in its oral ruling at the sentencing hearing. There is no merit to Defendant's argument. Even assuming that the district court said something different at the sentencing hearing than what appeared in the written order, our case law is clear that until a judgment is in writing, it is not a final, enforceable judgment. *See State v. Diaz*, 100 N.M. 524, 525, 673 P.2d 501, 502 (1983) (holding that a court is free to change an orally pronounced sentence until a written judgment is filed); *see also State v. Vaughn*, 2005-NMCA-076, ¶ 15, 137 N.M. 674, 114 P.3d 354 (stating that "[t]he general rule in New Mexico is that an oral ruling by a trial court is not final and, with only limited exceptions, it is not binding"). As Defendant himself acknowledges, the district court had the authority to modify its oral ruling at any time before the entry of the written judgment in this case. *See Diaz*, 100 N.M. at 525, 673 P.2d at 502. We therefore conclude that the district court did not err in including a term of supervised probation in the written judgment and sentence.

**CONCLUSION**

We vacate the one-year firearm sentencing enhancement on Defendant's conviction for conspiracy to commit aggravated burglary with a deadly weapon. We also reverse the district court's designation of Defendant's convictions in Counts I through V as serious violent offenses. We remand for the district court to consider whether Defendant's convictions for second degree kidnaping (Count I) and aggravated assault with a deadly weapon (Counts IV and V) were serious violent offenses and, if necessary, to enter appropriate findings. We affirm on all other issues.

**IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**MICHAEL E. VIGIL, Judge**