2008-NMCA-062

183 P.3d 963

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Bayward S. STONE, Jr., Defendant– Appellant.**

**No. 26,967.**

Court of Appeals of New Mexico.

Feb. 27, 2008.

Certiorari Denied, No. 30,981, March 28, 2008.

Gary K. King, Attorney General, Margaret McLean, Assistant Attorney General, Santa Fe, NM, for Appellee.

Liane E. Kerr, Albuquerque, NM, for Appellant.

## OPINION

SUTIN, Chief Judge.

{1} The main issue we consider is whether Defendant could properly be convicted of eight counts of contributing to the delinquency of a minor (CDM). Defendant received a

thirty-four-and-a-half year sentence after being convicted of two counts of criminal sexual penetration (CSP) of a child thirteen to sixteen years old, eight counts of CDM, one count of tampering with evidence, and three counts of conspiracy. Only the eight CDM convictions are at issue in this appeal. Seven of the CDM counts were based on evidence that Defendant served alcohol to minors at his house; the eighth was based on evidence that on a later date Defendant served alcohol to another minor. Defendant relies on *State v. Cuevas*, 94 N.M. 792, 617 P.2d 1307 (1980), *overruled on other grounds, State v. Pitts*, 103 N.M. 778, 714 P.2d 582 (1986), to argue that convicting him of eight separate counts of CDM violates double jeopardy. Applying the unit-of-prosecution analysis required by *Herron v. State*, 111 N.M. 357, 361, 805 P.2d 624, 628 (1991), and *State v. Barr*, 1999-NMCA–081, ¶¶ 15–16, 127 N.M. 504, 984 P.2d 185, we conclude that the evidence supports eight separate CDM convictions. Defendant also argues that he received ineffective assistance of counsel because counsel abandoned a motion for severance of offenses in exchange for the State's agreement to drop three felony charges. We conclude that Defendant's ineffective assistance claim is without merit because counsel's bargain was a reasonable strategy decision. We affirm.

## DISCUSSION

### I. Double Jeopardy: Unit of Prosecution

{2} Defendant's double jeopardy claim involves the proper unit of prosecution, that is, whether he can be properly convicted of multiple violations of a single statute. *See State v. Bernal*, 2006-NMSC–050, ¶ 7, 140 N.M. 644, 146 P.3d 289 (defining a unit-of-prosecution claim). We review this issue de novo. *Id.* ¶ 6.

{3} *Herron* was the first opinion in New Mexico "to frame the unit-of-prosecution indicia of distinctness under the modern analysis." *Bernal*, 2006-NMSC–050, ¶ 15, 140 N.M. 644, 146 P.3d 289. *Herron*, a sexual assault case, adopted a number of factors, including the temporal proximity of the acts, the location of the victim during each act, the existence of an intervening event, the sequencing of the acts, the defendant's intent as shown by his conduct and statements, and

the number of victims. *Bernal*, 2006-NMSC–050, ¶ 15, 140 N.M. 644, 146 P.3d 289. In unit-of-prosecution cases, "we attempt to determine, based upon the specific facts of each case, whether a defendant's activity is better characterized as one unitary act, or multiple, distinct acts, consistent with legislative intent." *Id.* ¶ 16. Time and space considerations help to determine distinctness. *See id.* "If time and space considerations cannot resolve the case, then a court may look at the quality and nature of the acts, or the objects and results involved." *Id.* (internal quotation marks and citation omitted). "The number of victims has been a particularly significant indicator in determining whether acts are distinct." *Id.* ¶ 18. "While the existence of multiple victims does not, itself, settle whether conduct is unitary or distinct, it is a strong indicator of legislative intent to punish distinct conduct that can only be overcome by other factors." *Id.* Because application of the *Herron* factors to determine whether multiple punishments are appropriate is highly fact-dependent, *see Bernal*, 2006-NMSC–050, ¶¶ 15–16, 140 N.M. 644, 146 P.3d 289, we proceed to review the facts at hand in detail.

### A. Background Evidence

#### 1. Evidence Related to Events on January 16 and 17

{4} Defendant was charged with seven counts of CDM based on evidence that he, along with Atman Kostendenous, served alcohol to six minors at Defendant's house on January 16, 2004. The State charged Defendant with CDM for each minor consuming alcohol. The victims were K.H., C.T., S.B., K.G., K.P., and J.H. As to one minor, K.H., the State charged two counts because there was evidence that Defendant served her alcohol on consecutive nights, January 16 and 17. Defendant was convicted of all seven CDM charges.

{5} Erin M. testified that she lived with Defendant, her father. In January 2004, she was fifteen years old. She testified that on January 16, 2004, Defendant bought alcohol for a party at his house that night. It was Defendant's idea to have all of the minors

come to the party and spend the night, because he did not want them going home drunk. Defendant wore only boxer shorts during the party. At one point, a parent came over, and Defendant told everyone to hide the alcohol. Another witness, C.T., also testified that Defendant was wearing only boxer shorts, but stated that if any parent came over, Defendant would put on jeans and a t-shirt.

{6} The alcohol consisted of cinnamon-flavored schnapps called Hot Damn, a "fruit thing" that Defendant made in a pitcher or jug, and beer. Everyone was drinking out of shot glasses and people were "chugging" alcohol. The group moved to Defendant's bedroom, where C.T. did a lap dance with Kostendenous.

{7} K.P. testified that he was thirteen years old in January 2004. Erin M. told K.P. that Defendant was going to buy beer for the party on January 16. K.P. testified that the group watched movies, and afterward Defendant brought out pina coladas mixed in an orange juice bottle. There was also beer and schnapps available. K.P. testified that Defendant and Kostendenous gave him alcohol. Everyone drank except for one person. K.P. testified that Defendant encouraged K.G., another minor, to drink two beers, saying that she had not been there earlier and had to catch up. He said that at one point the group moved to Defendant's bedroom, where they played truth or dare, and Erin and K.H. did lap dancing, which he described as not "much of anything." K.P. also testified that the next day Defendant handed out some papers saying that there had been nothing going on, and that Defendant wanted him to sign the papers. K.P.'s father testified that he had concerns about the party and had gone over to see what was going on. He said that he expressed his concerns to Defendant about minors drinking and that Defendant denied it.

{8} J.H. was fourteen years old when he attended the party on January 16. He said the kids were watching movies and everyone was drinking alcohol except for a few. There was schnapps, beer, and a mixture in a Sunny Delight bottle. He was not sure what it was, but it tasted like pina colada. Everyone shared the schnapps from a shot glass. J.H. said his head began to spin, and he lay down and fell asleep for awhile. When he got up, Defendant told him to have another beer because it would make his stomach feel better.

{9} C.T. testified that she was thirteen years old when she went to the party on January 16. Defendant brought in a Sunny Delight bottle and little glasses and poured it for the minors.

{10} S.B. testified that she was thirteen years old in January 2004 and that the minors played truth or dare in Defendant's bedroom. Defendant and Kostendenous brought in a white coconut mixture in a Sunny Delight bottle and people drank it out of short glasses. Beer and schnapps were also available. Defendant passed the alcohol to them and everyone passed it around.

{11} K.G. testified that she attended the party on January 16 and that she arrived at about 10:00 p.m. She was thirteen years old on that date. Defendant and Kostendenous were in the living room watching movies. Defendant asked her if she wanted a beer and then gave her one. K.G. was expecting alcohol because Erin M. told her that there would be alcohol. Erin M. became drunk and vomited on one of the boys at the party. K.G. said she saw other kids, S.B. and J.H., drinking beer, and that there was alcohol in a Sunny Delight bottle. K.G. also testified that J.H. was drunk.

{12} K.G. testified that she left in the morning on January 17, but came back in the evening with K.H. K.H. was seventeen years old. Defendant and Kostendenous were there. This time, Defendant had strawberry daiquiri mix and mixed it, with what K.G. thought was tequila, in a big Dr. Pepper bottle. K.G. drank and got sick. K.H. stayed and drank more.

## 2. Evidence Related to Events on January 30

{13} The events of January 30, 2004, were more serious. The evidence was that Defendant served alcohol to J.K. and then, after she was incapacitated, sexually penetrated her twice.

{14} J.K. testified that she was fourteen years old in January 2004. She and Erin M. were friends and played sports together. On January 30, she was invited to Erin's house to spend the night. She arrived at approximately 6:00 in the evening. During the course of the evening, Defendant made daiquiris in a Sunny Delight jug and served it to her. She drank a glass of it. Kostendenous offered her little white pills, which she refused. She drank a second daiquiri. She said she got dizzy, her body got heavy, and she could not get up. She had consumed alcohol before, but said she had not previously had that reaction. She fell asleep and awoke when Kostendenous was "messing" with her feet. She told him to leave her alone. She was passing out and then waking, which she described as going "in and out." She awoke again to find Kostendenous touching her legs and thighs, and again told him to leave her alone. At one point, she awoke and saw a pornographic movie on the television. J.K. also testified, after she was recalled as a witness, that Kostendenous had sexual intercourse with her while she was on the couch, prior to Defendant.

{15} During her testimony, J.K. described being on the couch and waking to find Defendant, naked, standing next to her, getting on top of her and pouring liquor down her face. She heard either Kostendenous or Defendant—she thought it was Defendant—ask her if the pills had kicked in. Defendant got on top of her and had sexual intercourse with her against her will. She later awoke in Defendant's bathtub, naked, with Defendant pouring water over her and Kostendenous watching. She remembered Defendant and Kostendenous saying things like, "Thanks for what she shared with us" and "Ain't that pretty." She also remembered waking up in Defendant's bed with Defendant having sexual intercourse with her a second time. She felt sharp pains and cried.

{16} At some point later, she awoke to find Erin lying next to her in the bed. Erin M. testified that J.K. said to her that J.K. thought Defendant had raped her. J.K. said that, at this time, she was wearing her basketball pants, and that the pants were unbuttoned and full of blood. J.K. testified that she was bleeding and that she tried to take a bath and Kostendenous came in and told her, "We didn't do anything to you that you did not want done to you." DNA testing of semen found on J.K.'s pants revealed two donors, one of whom was Defendant.

{17} Based on this evidence, Defendant was convicted of two counts of CSP of J.K., of one count each of tampering with evidence based on evidence that he attempted to destroy evidence on her body, of CDM, and of conspiring with Kostendenous to commit CDM.

## B. The Separate CDM Conviction Involving J.K. on January 30

{18} We can quickly separate the CDM conviction based on the events of January 30 involving J.K. from the other CDM convictions based on the events of January 16 and 17. Serving alcohol to a different minor victim on January 30 is sufficiently separate and distinct from the events two weeks earlier to permit separate punishments. *See Barr*, 1999–NMCA–081, ¶¶ 18–19, 127 N.M. 504, 984 P.2d 185 (relying on evidence showing two separate burglaries and a trip to El Paso as evidence of distinctness). Therefore, we focus on the events of January 16 and 17, and proceed to consider Defendant's argument that convicting him of the seven counts of CDM arising from the events on those two days violates double jeopardy.

## C. The Remaining Seven CDM Convictions Related to the January 16 and 17 Events

{19} Defendant argues that he can be convicted only of one count of CDM for serving alcohol to minors on January 16 and 17. He characterizes his act of providing alcohol to minors as a single incident, the party at his residence. He contends that he had a single intent to intoxicate minors by giving them alcohol. He indicates that many of the minors expected alcohol, and that they took turns drinking pina colada from a short glass. He argues that the victims were not transported to different locations as in *Barr*. He argues that, as in *Cuevas*, there can only

be one charge of CDM for serving alcohol to minors at a party.

{20} To resolve Defendant's claim, we turn first to the language of the CDM statute. It states that CDM "consists of any person committing *any act* or omitting the performance of any duty, which act or omission causes or tends to cause or encourage the delinquency of *any person* under the age of eighteen years." NMSA 1978, § 30–6–3 (1990) (emphasis added). In *Barr*, 1999–NMCA–081, ¶ 17, 127 N.M. 504, 984 P.2d 185, we noted the Legislature's use of "any act" and "any person," and that the language in the statute "appears to evince an intent to punish each act affecting each minor." However, we also noted that the Legislature included no express statement as to the specific unit of prosecution. *Id.* Thus, we engage in an analysis of whether "there exist indicia of distinctness among Defendant's CDM acts with the various minors under the facts of th[is] case." *Id.* In analyzing indicia of distinctness, application of the *Herron* factors leads us to the conclusion that Defendant was properly convicted of the seven counts of CDM at issue relating to January 16 and 17, because the evidence adequately establishes seven distinct CDM offenses.

{21} Two CDM convictions arose from Defendant's conduct involving K.H. The evidence was that Defendant served K.H. alcohol at the party on the evening of January 16, that she left the next morning, and that Defendant served her alcohol again when she returned on the following night. Evidence that Defendant supplied alcohol to K.H. on consecutive nights demonstrates that the two CDM convictions are permissible. *Cf. Barr*, 1999–NMCA–081, ¶¶ 18–19, 127 N.M. 504, 984 P.2d 185 (holding that the two separate burglaries were distinct).

{22} We also conclude that separate CDM convictions for serving alcohol to the other minors does not violate double jeopardy. There were multiple, different victims. *See Bernal*, 2006–NMSC–050, ¶ 20, 140 N.M. 644, 146 P.3d 289 (stating, "[i]mportantly, there were two victims" with respect to two attempted robberies, and concluding that there were two offenses where two victims

suffered separate and distinct harm); *Barr*, 1999–NMCA–081, ¶ 18, 127 N.M. 504, 984 P.2d 185 (stating that "the presence of multiple victims . . . is the most salient distinctness factor which, as indicated in *Herron*, will likely give rise to multiple offenses" (internal quotation marks and citation omitted)). Additionally, other factors support the view that the CDM offenses were sufficiently distinct to justify multiple CDM punishments. *See Bernal*, 2006–NMSC–050, ¶¶ 20–21, 140 N.M. 644, 146 P.3d 289 (describing several factors in addition to that of multiple victims in two attempted robberies that indicated indicia of distinctness, including separate and distinct harm suffered, different times of the criminal acts, clearly identifiable separate acts, and different types of force used). This was a planned event at which Defendant expected to serve different minors. He offered a variety of alcoholic beverages, encouraging the different attendees to pick his or her path to inebriation, as well as individually encouraging some to drink in excess. Defendant's statements indicate that he actively encouraged J.H. and K.G. to drink, telling K.G. that she arrived late and had to have two beers to catch up, and telling J.H., who had apparently already had too much to drink, to drink another beer because it would make his stomach feel better. Although the evidence is not precise about the time Defendant, as host of the party in his home, began serving alcohol and the time he stopped, the evidence indicates that Defendant served and conversed with the minors over a period of several hours during the course of the evening. Given the time, the variety of drinks provided, the active and individual attention given to different minors, and the fact that there were multiple victims, we conclude that each CDM conviction is distinct.

{23} We reject Defendant's argument that this case is controlled by *Cuevas*. *Cuevas* is distinguishable. There, the defendant did not host the party; he was invited as a guest and he did not provide alcohol. *See Cuevas*, 94 N.M. at 792, 617 P.2d at 1307. He drank one shot of tequila while demonstrating to the group of minors how to drink tequila with a lemon. *Id.* On these facts, our Supreme Court held as a matter of policy that three counts of CDM should be merged into one

count. *Id.* at 794, 617 P.2d at 1309. There is a significant difference between what happened in *Cuevas* and what happened here. *See Barr,* 1999–NMCA–081, ¶ 21, 127 N.M. 504, 984 P.2d 185 (distinguishing *Cuevas,* in that the *Cuevas* opinion did "not indicate any differences in the interplay between the [defendant] and individual juveniles," noting only that the defendant "performed one act of drinking in front of twenty juveniles who were passive witnesses"). In the present case, Defendant was not a guest who was merely demonstrating the art of drinking tequila to an audience of passive juveniles. Instead, he actively served varieties of alcohol over a considerable period of time at his own home to the invited minors, and he personally interacted with the minors, intending and encouraging different minors to drink to intoxication.

{24} Further, we do not agree that the party was a single continuous event, but even were it so considered, it would be insufficient to require us to merge all counts into one. Claiming a continuous event or course of conduct oversimplifies the circumstances and does not adequately consider the facts or reflect the analysis required by *Herron* and *Barr.* For the same reasons, we also do not agree that Defendant's claimed single intent to "give the children alcohol" precludes merger of the counts. *See State v. DeGraff,* 2006–NMSC–011, ¶¶ 32, 37, 39, 139 N.M. 211, 131 P.3d 61 (holding three tampering with evidence convictions were permissible because of discrete acts, even though the defendant may have had a single intent). Finally, we reject Defendant's argument that the rule of lenity requires that the seven CDM convictions be reduced to one. The rule of lenity applies when there is not a sufficient showing of distinctness. *See Barr,* 1999–NMCA–081, ¶ 15, 127 N.M. 504, 984 P.2d 185. As we have discussed, there is ample evidence of distinctness, and, therefore, the rule of lenity is inapplicable.

{25} For all of these reasons, we hold that eight CDM convictions were permissible.

## II. Ineffective Assistance of Counsel

{26} Defendant was also charged with CSP of K.H., a second degree felony occurring on January 17, as well as two fourth degree felonies related to K.H., namely, tampering with evidence and false imprisonment. Defendant successfully obtained an order severing these three charges involving K.H. from the trial that is the subject of the present appeal. Consequently, the only charges related to K.H. that remained in this trial were two of the CDM charges. In a separate motion to sever, Defendant moved to sever the offenses of January 30 involving J.K. from all of the CDM offenses of January 16 and 17. During a recess in the motions hearing, the State and defense counsel reached an agreement under which the State would drop the three severed felony charges related to K.H. if Defendant agreed to drop his motion to sever the offenses related to J.K. Defense counsel told the court that because the State had agreed to drop the three severed felony charges related to K.H., then "I'm willing to try [the charges related to] J.K. at the same time [as the CDM charges arising out of January 16–17]." The State then dismissed the felony charges related to K.H. with prejudice.

{27} To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below that of a reasonably competent attorney, and that the defendant was prejudiced by the deficient performance. *State v. Hester,* 1999–NMSC–020, ¶ 9, 127 N.M. 218, 979 P.2d 729. The burden of proof is on the defendant to prove both prongs. *Id.* Defendant argues that his attorney's agreement to drop the motion for severance of the charges involving J.K. in exchange for the State's agreement to drop the three felony charges involving K.H. constituted ineffective assistance of counsel because his agreement "severed only two of the sex cases from the case to be tried, but left a third case in, a case which was unrelated to the January 16 party," all to Defendant's detriment. We disagree. This was the kind of strategy decision that we will not second-guess. *See Lytle v. Jordan,* 2001–NMSC–016, ¶ 43, 130 N.M. 198, 22 P.3d 666 (holding that the defendant failed to demonstrate that his attorney's actions were "not attributable to a rational trial strategy" and reiterating that the appellate court will not second-guess the trial strategy

and tactics of defense counsel). The three felony charges involving K.H., a second degree felony and two fourth degree felonies, carried with them potential exposure of twelve years of imprisonment. *See* NMSA 1978, § 31–18–15 (2003) (amended 2005 and 2007) (detailing incarceration for various felonies). Counsel's strategy to eliminate the potential of significant imprisonment is understandable and the elimination of that potential was a tangible and significant benefit to Defendant.

{28} In contrast, the potential success of Defendant's procedural motion was unclear. *See State v. Gallegos,* 2007–NMSC–007, ¶¶ 9–46, 141 N.M. 185, 152 P.3d 828 (discussing the detailed analysis involved when a motion for severance of offenses is raised). Moreover, even if Defendant had prevailed on the motion and the charges involving J.K. had been tried separately, it is highly speculative to assume that severance would have resulted in any actual benefit to Defendant since it is uncertain whether severance would have resulted in a greater benefit than avoiding twelve extra years of imprisonment. *See Duncan v. Kerby,* 115 N.M. 344, 348–49, 851 P.2d 466, 470–71 (1993) (stating that prejudice must be shown before a defendant is entitled to relief based on ineffective assistance of counsel). Given that Defendant has not demonstrated the likely success of his procedural motion and given the speculative nature of any benefit from severance, we cannot conclude that agreeing to drop the procedural motion in exchange for a significant and tangible reduction in Defendant's exposure was an unreasonable strategy, much less a performance that fell below that of a reasonably competent attorney.

## CONCLUSION

{29} The evidence supports eight separate CDM convictions and Defendant's ineffective assistance claim is without merit. We affirm his convictions.

{30} **IT IS SO ORDERED.**

WE CONCUR: CYNTHIA A. FRY and IRA ROBINSON, Judges.