This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-37891**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.

**DAMIEN HYATT,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF TORRANCE COUNTY**
**Matthew G. Reynolds, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellee

M. Naomi Salazar
Stephen C.M. Long
Albuquerque, NM
for Appellant

**MEMORANDUM OPINION**

**VARGAS, Judge.**

**{1}** Defendant Damien Hyatt pled guilty to four counts of contributing to the delinquency of a minor (CDM), contrary to NMSA 1978, Section 30-6-3 (1990); and third-degree criminal sexual penetration (CSP), contrary to NMSA 1978, Section 30-9-11(F) (2009). Following sentencing, Defendant appealed, alleging three errors on the part of the district court. First, Defendant contends the district court erred by denying Defendant's emergency motion to release the raw data used by the Department of Corrections (the Department) to prepare Defendant's sixty-day diagnostic evaluation

and presentence report and to continue sentencing. Second, Defendant argues his convictions for four counts of CDM violate double jeopardy. Third, Defendant claims the district court improperly designated Defendant's third-degree CSP conviction as a serious violent offense because it failed to make specific factual findings in the record. We affirm the district court's order denying Defendant's emergency motion in its entirety. Because we conclude that two of Defendant's convictions of CDM violate double jeopardy and that the district court erred when it failed to make specific findings addressing whether Defendant's third-degree CSP conviction is a serious violent offense, we remand this matter to the district court to vacate two of Defendant's CDM convictions and resentence Defendant for only two CDM convictions, and to enter findings regarding Defendant's third-degree CSP conviction.

## DISCUSSION

### I.      The District Court Did Not Err in Denying Defendant's Motion for the   Raw Data From the Department and for a Continuance

**{2}**      In December 2016 Defendant was charged with twenty-nine offenses across three cases related to the sexual exploitation and sexual assault of minors. In July 2018 Defendant entered into a plea agreement, pleading guilty to ten of the charges in exchange for the State's agreement to dismiss the remaining charges. The district court accepted the plea agreement and entered a judgment and commitment, which committed Defendant to the Department and instructed the Department to conduct an evaluation of Defendant and prepare a presentence report for the sentencing hearing. The judgment and commitment directed the Department to provide its evaluation and presentence report to the district court, probation and parole, the State, and Defendant.

**{3}**      The Department completed the evaluation and presentence report and provided both to the parties. Upon receipt, Defendant filed an emergency motion, about ten days before the scheduled sentencing hearing, requesting that the district court order the Department to release the "raw data" used by the Department to prepare the evaluation, which was presumably relied upon in the presentence report and continue the sentencing hearing to permit his expert sufficient time to review that raw data. Defendant's motion alleges that when Defendant's counsel contacted the Department requesting the raw data, the Department indicated that it would provide the information upon receipt of a court order "specify[ing] exactly what information is being [o]rdered and to whom it is to be released." The district court denied Defendant's motions and sentenced Defendant in November 2018.

**{4}**      Defendant contends on appeal that the district court erred when it denied his emergency motion. We review the district court's denial of Defendant's request for the raw data as well as his request for a continuance for an abuse of discretion. *See State v. Desnoyers*, 2002-NMSC-031, ¶ 25, 132 N.M. 756, 55 P.3d 968 (explaining that we review the denial of discovery in a criminal case for an abuse of discretion), *abrogated on other grounds by State v. Forbes*, 2005-NMSC-027, 119 P.3d 144; *State v. Salazar*, 2007-NMSC-004, ¶ 10, 141 N.M. 148, 152 P.3d 135 (indicating that we review the

denial of a continuance for an abuse of discretion). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *Id.* (internal quotation marks and citation omitted). "We cannot say that the [district] court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted).

{5}     In support of his claim that the district court erroneously denied his motion to obtain the raw data used to prepare his evaluation and presentence report, Defendant raises two arguments. First, Defendant contends that he is entitled to the information pursuant to Rule 5-501(A)(1), (4) NMRA. Next, Defendant argues that his right to effective representation at sentencing and due process considerations mandate that the raw data be shared with him so that he may "have the opportunity to confirm or dispel the validity of the conclusions reached by [the Department]."

**A.     Defendant Has Not Demonstrated That He Has a Right to the Raw Data Under Rule 5-501(A)(1), (4)**

{6}     Defendant contends he is entitled to the raw data under Rule 5-501(A)(1) because "[t]he raw data collected was based on statements made by . . . Defendant," which the State is obligated to disclose. Alternatively, he claims the State is obligated to produce the raw data pursuant to Rule 5-501(A)(4) because its obligation to disclose results of mental examinations rationally extends to the information on which those results are predicated. Assuming, without deciding, that the raw data Defendant sought was the kind of information contemplated by Rule 5-501(A)(1) or (4), we conclude that Defendant is not entitled to the raw data under this rule because he has not shown that the information he requests is "within the possession, custody or control of the state." *See* Rule 5-501(A)(1) (requiring disclosure of "any statement . . . within the possession, custody or control of the state") and Rule 5-501(A)(4) (requiring disclosure of "any results or reports of physical or mental examinations, and of scientific tests or experiments, . . . within the possession, custody or control of the state").

{7}     Defendant contends that "[t]he information is in the custody of the State via [the Department] and received by [the Department] because of an [o]rder agreed by the State and [Defendant]." Defendant fails to explain or provide any authority to support his contention that the State's approval of the form of the judgment and commitment (which was also approved by Defendant) brings the raw data gathered by the Department into the possession, custody, or control of the State. Indeed, this Court has held that "[t]he [s]tate is ordinarily not charged with disclosure of material in the possession of government agencies that are not investigative arms of the prosecution and have not participated in the investigation of the case . . . . The prosecutor does not have possession or control of materials held by the court, by private firms, or by other, unrelated agencies." *State v. Jackson*, 2004-NMCA-057, ¶ 13, 135 N.M. 689, 92 P.3d 1263 (alternation, internal quotation marks, and citations omitted).

{8}     Here, we note that the power to commit a convicted person to the Department for purposes of diagnosis is a discretionary power of the district court. *See* NMSA 1978, §

31-20-3 (1985); *State v. Watchman*, 1991-NMCA-010, ¶ 8, 111 N.M. 727, 809 P.2d 641 (explaining that whether to order a diagnostic commitment is within the trial court's discretion), *overruled in part on other grounds by State v. Hosteen*, 1996-NMCA-084, ¶ 10 n.6, 122 N.M. 228, 923 P.2d 595. Diagnostic evaluations ordered by the district court shall be made "with direction that the [district] court be given a report" of the diagnosis. Section 31-20-3(C). The district court may also order the Department to prepare a presentence report to be used at sentencing, as long as such a report is provided to the defendant before sentencing. *See* NMSA 1978, § 31-21-9 (1972); *see also State v. Lack*, 1982-NMCA-111, ¶ 28, 98 N.M. 500, 650 P.2d 22 ("But where . . . the [district court] orders a presentence report, the defendant has a right to prior opportunity to review its contents, and to be heard on matters contained therein."). In light of the Legislature's clear grant of discretionary power to the district court to order evaluations and presentence reports and Defendant's failure to explain how the Department serves as an investigatory arm of the State under circumstances such as these, we see no basis for Defendant's claim that the State is in possession, custody, or control of the information, requiring disclosure under Rule 5-501(A)(1) or (4).

**B.    Defendant Did Not Establish a Violation of His Right to Due Process or Effective Assistance of Counsel**

**{9}**    Defendant next contends that his "right to effective representation at sentencing and due process . . . mandate that he have the opportunity to confirm or dispel the validity of the conclusions reached by [the Department]." In support of his argument, Defendant cites *State v. Aker*, 2005-NMCA-063, ¶ 10, 137 N.M. 561, 113 P.3d 384. While Defendant fails to explain the applicability of this Court's decision in *Aker* to the facts of this case, *Aker* teaches that, "to the extent the [district] court relies on any certain information in determining a defendant's sentence, due process may require advance notice to the defendant so that the defendant has the opportunity to challenge the accuracy of that information." *Id*. ¶10 (alteration, internal quotation marks, and citation omitted). *Aker*, however, is clear that to be entitled to relief for a due process violation during sentencing, a defendant must show that he was prejudiced by the process he claims he was denied. *See id.* ¶ 16 (holding that the state's error does not warrant reversal "because . . . there is no evidence that [the d]efendant was prejudiced"); *State v. Mares*, 1991-NMCA-052, ¶ 12, 112 N.M. 193, 812 P.2d 1314 (holding the defendant's due process rights were not violated because he was given the opportunity for meaningful participation and he was not prejudiced).

**{10}**    Here, Defendant does not explain how he was prejudiced by the district court's denial of the raw data beyond his conclusory statements that the state and federal constitutions "mandate that he have the opportunity to confirm or dispel the conclusions reached by [the Department]" and "[t]he Court would *seemingly* be helped by having more information[.]" (Emphasis added.) Complicating our review of the prejudicial effect of the district court's denial of the raw data is the fact that Defendant has failed to explain what information is contained in the evaluation, presentence report, his expert's reports, and the raw data he sought, leaving us completely in the dark. Nothing in the record clarifies what tests were given to Defendant, what the results of those tests were,

what type of information Defendant or his expert expected to be contained in the raw data, and how it might be useful to Defendant or his expert at sentencing. Defendant did not provide an affidavit from his expert explaining what he would expect to see in the raw data, how it would have been helpful to him, or how he might have used it in the preparation of his report, nor did Defendant question his expert at the sentencing hearing about any limitations imposed on his evaluation, opinion, or testimony as a result of his inability to review the raw data. Finally, because the record on appeal did not include either the evaluation or the presentence report, or the reports of Defendant's experts, we could not look to those documents to assist us in determining whether Defendant was prejudiced.[1]

{11}   Furthermore, nothing in the sentencing hearing indicates that Defendant was prejudiced or otherwise limited by the denial of his motion for the raw data. At the sentencing hearing, we note Defendant put on testimony from two expert witnesses. First, the district court considered a mitigation report prepared by Megan Leshack, a licensed master social worker and mitigation specialist. During her brief testimony, Ms. Leshack testified that based on the many hours she spent with Defendant, she concluded that he is amenable to treatment and supervision. Ms. Leshack did not discuss or refer to the evaluation or the presentence report as part of her testimony or otherwise indicate that the raw data from the evaluation would have been helpful.

{12}   Similarly, Dr. Samuel Roll, Defendant's expert psychologist, never indicated that he was unable to determine whether the Department's conclusions were correct because he was denied the opportunity to review the raw data. Instead, he testified that the Department's conclusions were erroneous on numerous counts and explained that the testing he administered did not support those conclusions. Dr. Roll explained that he conducted two separate psychological evaluations of Defendant, twenty-two months apart. He gave Defendant a number of tests, and the results of those tests show that Defendant did not suffer from an antisocial personality disorder, was not a psychopath, and did not suffer from any other personality disorder, thereby making him more amenable to treatment. Defendant, he testified, did suffer from depression and anxiety, but was capable of introspection and could think logically and coherently, all of which support a high probability of rehabilitation and low risk of recidivism. Dr. Roll's tests detected no indication of pedophilia or other sexual perversions in Defendant's test results.

{13}   Notwithstanding his lack of access to the raw data, Dr. Roll also challenged the accuracy of the Department's evaluation on several grounds during his testimony. First, he expressed concern about two of the tests that were given to Defendant by the Department, explaining that the results of those tests warranted an additional test that was not given as part of the Department's evaluation. Dr. Roll testified that when the

---

[1]We recognize that the evaluation and presentence report are typically not made a part of the record for privacy reasons. However, absent an explanation from Defendant's expert of the contents of the evaluation and presentence report and the raw data he expected was used to prepare those documents, or a similar explanation from counsel, the documents themselves may have assisted us in our review and could have been filed under seal.

results of the additional testing were factored in, Defendant's scores were normal, rather than scores indicating psychopathic deviance.[2] The correct interpretation of all of the tests in all of the reports, he opined, is that Defendant is low risk to harm others, very high risk for rehabilitation, and unlikely for recidivism.

**{14}** Dr. Roll also testified that the Department's reliance on features common to many people who do not suffer from a deviant personality disorder to support its conclusion that Defendant suffered from such a disorder was alarming, as nothing in the tests that he gave support a conclusion that Defendant suffered from any psychopathic deviance, and he did not view that as the correct conclusion. He explained that he reviewed the evaluation and that all of the data he obtained from tests he gave to Defendant contradicts the Department's conclusion that Defendant displays manipulative behaviors towards others and is at high risk of reoffense. Finally, he disagreed with the conclusion in the evaluation characterizing Defendant as a sexual predator, again pointing to Defendant's scores on the testing he administered.

**{15}** The record indicates that Defendant was given an opportunity for meaningful participation to present evidence regarding his psychological condition, amenability to treatment, likelihood of rehabilitation, and risk of recidivism. *See Mares*, 1991-NMCA-052, ¶ 12 (concluding that the defendant was not denied due process because he was given an opportunity for meaningful participation). Indeed, Defendant's expert made several specific challenges to the Department's evaluation and the presentence report. Absent an explanation as to what additional challenges to the Department's conclusions he was unable to make without the raw data, we conclude that Defendant has failed to show he was prejudiced by the district court's denial of his motion. *See Aker*, 2005-NMCA-063, ¶¶ 16, 34 (requiring a showing of prejudice to support a due process violation and a claim for ineffective assistance of counsel). Defendant's claim that his counsel could not effectively represent him at sentencing without access to the raw data must also fail, as a claim of ineffective assistance of counsel also requires a showing of prejudice; and as we have already concluded, Defendant has failed to make such a showing. *See State v. Bahney*, 2012-NMCA-039, ¶ 48, 274 P.3d 134 (explaining that a defendant must show counsel's apparent failings were prejudicial to him or her to establish ineffective assistance); *Aker*, 2005-NMCA-063, ¶ 34 (holding that the defendant did not receive ineffective assistance, as he did not show prejudice); *State v. Guerra*, 2012-NMSC-027, ¶ 23, 284 P.3d 1076 ("If a defendant does not make such a showing [of prejudice], the defendant has not carried his or her burden, and the presumption of effective assistance controls.").

**{16}** Defendant also argues that it was an error for the district court to deny his motion for a continuance. However, since Defendant sought the continuance so that the defense expert would "have ample opportunity to review the raw data[,]" and we have held that it was not error for the district court to deny the motion for the raw data, we

---

[2]Based on Dr. Roll's response, we glean that Defendant's evaluation or presentence report concluded that Defendant showed signs of psychopathic deviance, but because that information was not part of the record, we are unable to confirm whether this is the case.

further hold that it was not an abuse of discretion for the district court to deny Defendant's motion for a continuance.

## II. Two of Defendant's Convictions for Contributing to the Delinquency of a Minor Violate Double Jeopardy

**{17}** As a part of his plea agreement, Defendant pleaded guilty to four charges of CDM, but reserved his right to appeal the district court's ruling that those four convictions do not violate double jeopardy. *State v. Hodge*, 1994-NMSC-087, ¶¶ 17, 32, 118 N.M. 410, 882 P.2d 1 (recognizing the right to appeal issues specifically reserved pursuant to the terms of a conditional plea). "Contributing to the delinquency of a minor consists of any person committing any act or omitting the performance of any duty, which act or omission causes or tends to cause or encourage the delinquency of any person under the age of eighteen years." Section 30-6-3.

**{18}** Defendant's CDM convictions are based on allegations that in September 2016, Defendant provided alcohol to four minor children, identified as JS, DP, BB, and RN. Defendant contends that he committed a single act of providing alcohol to one minor—who subsequently shared the alcohol with the three other minors—limiting his exposure to a single charge of CDM.

**{19}** Defendant's double jeopardy argument "involves the proper unit of prosecution, that is, whether he can be properly convicted of multiple violations of a single statute." *State v. Stone*, 2008-NMCA-062, ¶ 2, 144 N.M. 78, 183 P.3d 963. "We review this issue de novo." *Id.* "The unit-of-prosecution analysis is done in two steps. First, we review the statutory language for guidance on the unit of prosecution." *State v. Bernal*, 2006-NMSC-050, ¶ 14, 140 N.M. 644, 146 P.3d 289. Because we have previously held that the CDM statute includes "no express statement as to the specific unit of prosecution[,]" *Stone*, 2008-NMCA-062, ¶ 20, "we move on to the second step, in which we determine whether a defendant's acts are separated by sufficient indicia of distinctness to justify multiple punishments under the same statute[.]" *Bernal*, 2006-NMSC-050, ¶ 14. We consider, "based upon the specific facts of each case, whether a defendant's activity is better characterized as one unitary act, or multiple, distinct acts, consistent with legislative intent." *Stone*, 2008-NMCA-062*, ¶ 3 (internal quotation marks and citation omitted). To evaluate a defendant's actions we look to such factors as the: "(1) temporal proximity of the acts; (2) location of the victim(s) during each act; (3) existence of an intervening event; (4) sequencing of acts; (5) defendant's intent as evidenced by his conduct and utterances; and (6) the number of victims." *State v. Barr*, 1999-NMCA-081, ¶ 16, 127 N.M. 504, 984 P.2d 185.

**{20}** In this case, our review is complicated by the fact that the matter did not go to trial, and we have no witness testimony to consider while evaluating Defendant's claims. Nonetheless, we are able to review a double jeopardy claim "following a guilty plea when defense counsel has placed sufficient facts in the record" for our review. *State v. Sanchez*, 1996-NMCA-089, ¶ 11, 122 N.M. 280, 923 P.2d 1165; *see State v. Wood*, 1994-NMCA-060, ¶ 19, 117 N.M. 682, 875 P.2d 1113 (stating that "a factual basis must

appear in the record" to support a double jeopardy claim); *State v. Jackson*, 1993-NMCA-092, ¶¶ 4, 18-19, 116 N.M. 130, 860 P.2d 772 (analyzing a double jeopardy claim from facts established during the sentencing hearing); *State v. Tsethlikai*, 1989-NMCA-107, ¶¶ 2, 8-9, 109 N.M. 371, 785 P.2d 282 (analyzing a double jeopardy claim from facts in a sentencing memorandum).

**{21}**   To support his claim, Defendant points us to the affidavit of Deputy Jose Gutierrez, attached to the criminal complaint. *See State v. Andazola*, 2003-NMCA-146, ¶¶ 2, 18, 134 N.M. 710, 82 P.3d 77 (using facts in the record proper, including the affidavit to the criminal complaint, to evaluate a defendant's double jeopardy challenge). The affidavit indicates that DP told Deputy Gutierrez "they went to the parking lot of Wal-Mart . . . where there were other teens under the age of 18 . . . where [Defendant] . . . provided . . . two bottles of alcohol . . . [and] all the juveniles (JS, DP, RN, and BB) who were present consumed the alcohol." DP later revised her account and told Deputy Gutierrez that Defendant "did not meet them at Wal-Mart with the alcohol, rather, they went and picked it up from [him]." DP explained that JS had asked Defendant for the alcohol via Snapchat. DP also advised that on the night he provided the alcohol, Defendant asked DP for nude photos and sexual favors in exchange for the alcohol. JS confirmed that Defendant Snapchatted DP "saying he would get them alcohol, but he needed something in return." DP told the deputy that while JS was Snapchatting with Defendant, JS would not allow DP to see her exchanges with the Defendant and was unsure if JS sent explicit photos of herself to Defendant when she asked him for alcohol. JS later admitted that she had sent explicit photos to Defendant, though the affidavit is unclear as to whether the photos were sent at the time JS asked Defendant for alcohol, or if they were sent at a different time. Defendant contends that there was no separation of time or indicia of distinctness in his actions warranting the treatment of the incident as separate offenses.

**{22}**   In response to Defendant's argument, the State contends that all four convictions should stand because Defendant knowingly provided, and intended to provide, alcohol to all four of the minor victims. In support of its argument, the State points out that the affidavit uses the plural "they" and "them" when describing Defendant's actions of providing alcohol. The State also contends the affidavit supports a conclusion that "[a]ll four minors were present at the parking lot at the time Defendant provided the alcohol and all four minors present consumed the alcohol." Finally, the State claims "the affidavit indicates that preceding providing the alcohol, Defendant independently pressured at least two of the minors (the two victims interviewed by the investigating officer—DP and JS) to provide explicit photographs/sexual favors in exchange for providing the alcohol." "Under these facts," the State claims, "even if not separated by time and space, Defendant was correctly convicted of four counts of CDM."

**{23}**   In evaluating Defendant's double jeopardy challenge to the four CDM convictions, the district court relied primarily on the last of the indicia of distinctness factors—that there were four victims—to hold that Defendant's four convictions do not violate double jeopardy. To be sure, "[t]he number of victims [is] . . . a particularly significant indicator in determining whether acts are distinct." *Stone*, 2008-NMCA-062*, ¶*

3 (internal quotation marks and citation omitted). Though "the existence of multiple victims does not, itself, settle whether conduct is unitary or distinct, it is a strong indicator of legislative intent to punish distinct conduct that can only be overcome by other factors." *Id.* (internal quotation marks and citation omitted). Taking into consideration the number of victims, as well as the other factors we consider to determine whether a defendant's actions are unitary or multiple, distinct acts, we conclude that the facts set out in Deputy Gutierrez's affidavit support Defendant's conviction for only two of the four convictions for CDM.

**{24}**     Because Defendant committed but one singular act of providing alcohol, the temporal proximity of the acts and the lack of intervening acts weigh against a conclusion that there is an indicia of distinctness between the four convictions. However, the fact that all four victims were apparently present when Defendant provided the alcohol supports the district court's holding that Defendant committed multiple, distinct acts. The remaining factors—the sequencing of acts and Defendant's intent as evidenced by his conduct and utterances—support multiple distinct acts with respect to DP and JS, but not the remaining two victims. Deputy Gutierrez's affidavit shows that before providing the alcohol, Defendant was in contact with DP and JS and negotiated with each of them to provide alcohol in exchange for sexual favors or explicit photographs from each girl. *See Stone*, 2008-NMCA-062*, ¶ 23 (finding significant, that the defendant personally interacted with the minors over a period of time and intended and encouraged them to drink to intoxication). By contrast, nothing in the record indicates that Defendant had any communication with RN or BB. Other than the fact that they may have gone with JS and DP to pick up the alcohol, RN and BB do not appear in the sequencing of the events leading up to Defendant's delivery of the alcohol, and there is no other evidence that Defendant intended to provide the alcohol to RN or BB. There is no indication that RN or BB asked Defendant to provide them with alcohol, that he asked them for anything in exchange for providing them with the alcohol as he had done with JS and DP, or that he otherwise encouraged them to drink. Without more, we cannot conclude that Defendant committed multiple distinct acts that support convictions for CDM related to RN and BB. *See id.*

**{25}**     Taking all of these factors into consideration, we hold that there are insufficient indicia of distinctness to support Defendant's CDM charges as to RN and BB, and that those convictions violate double jeopardy. However, given the information in the record supporting Defendant's intentional acts of soliciting sexual favors and explicit photographs from DP and JS in exchange for providing alcohol to them and his delivery of the alcohol to DP, we hold that there are sufficient indicia of distinctness to support the CDM charges as to DP and JS.

**{26}**     We reject Defendant's argument that *State v. Cuevas*, 1980-NMSC-101, 94 N.M. 792, 617 P.2d 1307, *overruled on other grounds by State v. Pitts*, 1986-NMSC-011, ¶ 9 n.2, 103 N.M 778, 714 P.2d 582, is controlling in this matter. In *Cuevas*, our Supreme Court concluded that policy considerations require that the defendant's counts for CDM be merged, reasoning that multiple convictions were excessive when the defendant did not provide the alcohol to the minors, but only attended a party where he demonstrated

how to drink tequila with lemon. *Id.* ¶¶ 14-15. This case, however, differs from *Cuevas* in two significant ways. First, the defendant in *Cuevas* did not provide the alcohol to the minors. *Id.* ¶ 4. His bad acts were limited to a drinking demonstration. *Id.* Second, his wrongful acts were not done in exchange for sexual favors or explicit photographs, as is the case in the matter before us. Based on these distinctions, we conclude that the policy considerations leading the *Cuevas* Court to conclude that multiple CDM convictions were excessive under the circumstances of that case, are inapplicable here.

**{27}** We therefore affirm Defendant's two convictions for CDM as to JS and DP and remand the matter to the district court with instructions to vacate the CDM convictions as to RN and BB and resentence Defendant accordingly.

### III. The District Court Erred by Failing to Make Specific Findings in the Record

**{28}** Per the plea agreement, Defendant pleaded guilty to one charge of third-degree CSP for the sexual assault of CK. At the sentencing hearing, the district court expressly found that the third-degree CSP charge was a serious violent offense but made no other factual findings regarding Defendant's CSP conviction. On appeal, Defendant argues that the district court erred when it failed to make specific findings that the offense was committed in a physically violent manner either with an intent to do serious harm or with recklessness in the face of knowledge that one's acts are reasonably likely to result in serious harm. To rectify the error, Defendant asks this Court to strike the district court's designation of Defendant's conviction for third-degree CSP as a serious violent offense.

**{29}** The Earned Meritorious Deductions Act (EMDA) provides that prisoners convicted of serious violent offenses may earn only four days per month, as opposed to thirty, of good time credit for time served. *See* NMSA 1978, § 33-2-34(A)(1),(2) (2015). A conviction for third-degree CSP is among those that may be designated by a district court as a serious violent offense. *See* § 33-2-34(L)(4)(o). However, we have held that for the district court to make this designation, it must find that that the offense was "committed in a physically violent manner either with an intent to do serious harm or with recklessness in the face of knowledge that one's acts are reasonably likely to result in serious harm." *State v. Morales*, 2002-NMCA-016, ¶ 16, 131 N.M. 530, 39 P.3d 747, *abrogated on other grounds by State v. Frawley*, 2007-NMSC-057, 143 N.M. 7, 172 P.3d 144. Further, "[b]ecause a court's designation of a crime as a serious violent offense affects the length of time the defendant serves in prison, it is important that the [district] court make specific findings both to inform the defendant being sentenced of the factual basis on which his good time credit is being substantially reduced, and to permit meaningful and effective appellate review of the court's designation." *State v. Loretto*, 2006-NMCA-142, ¶ 12, 140 N.M. 705, 147 P.3d 1138.

**{30}** In this case, we agree with Defendant, and the State concedes, that the district court erred when it did not make specific findings that Defendant's third-degree CSP conviction was "committed in a physically violent manner either with an intent to do serious harm or with recklessness in the face of knowledge that one's acts are reasonably likely to result in serious harm." *Morales*, 2002-NMCA-016, ¶ 16. However,

Defendant does not provide any authority to support his request or otherwise explain why we should deviate from our past practice of remanding the matter to the district court to make the relevant findings, and instead strike the designation. *See State v. Branch*, 2018-NMCA-031, ¶¶ 57, 59, 417 P.3d 1141 (remanding to the district court for findings as to whether the defendant committed a serious violent offense, noting that such findings are "both important and required"); *State v. Scurry*, 2007-NMCA-064, ¶ 14, 141 N.M. 591, 158 P.3d 1034 (noting that "the district court did not complete its responsibility to provide sufficient findings" and remanding to the district court for findings as to whether the defendant committed a serious violent offense); *Loretto*, 2006-NMCA-142, ¶¶ 21-22 (remanding for findings as to whether the defendant committed a serious violent offense); *Morales*, 2002-NMCA-016, ¶ 19 (same). Absent such authority or explanation, we decline his request to strike the designation and instead remand to the district court to enter findings in accordance with the standard described in *Morales*, 2002-NMCA-016, ¶ 16. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("We assume where arguments in briefs are unsupported by cited authority [that] counsel . . . was unable to find any supporting authority."); *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (explaining that the appellate court does not review unclear or undeveloped arguments).

**CONCLUSION**

**{31}** We remand this matter to the district court with instructions to vacate two of Defendant's charges for CDM and to resentence Defendant accordingly. On remand, the district court shall also make findings regarding Defendant's status as a serious violent offender. We affirm the district court on all other grounds challenged by Defendant.

**{32}   IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**SHAMMARA H. HENDERSON, Judge**